

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIETTA L. JOHNSON, M.D., DANIEL
IVANKOVICH, M.D. & KAREN  NASH, M.D.,

         Plaintiffs,

vs.

COOK COUNTY BUREAU OF HEALTH SERVICES,
Robert R. Simon,M.D., individually and
in his official capacity, Aaron
Hamb, M.D., Clifford Crawford, M.D.,
individually and in his official
capacity,

         Defendant.

**08CV2139**
**JUDGE CASTILLO**
**MAG.JUDGE COX**

)
)  JURY TRIAL DEMANDED
)
)
)
)
)  **F I L E D**
)  Apr 15. 2008
)  APR 1 5 2008
)

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

NOW COMES the Plaintiffs, VIETTA JOHNSON, M.D., DANIEL

IVANKOVICH, M.D., and KAREN NASH, M.D., (hereinafter collectively

referred to as "Plaintiffs") by and through their attorney, Linda

C. Chatman of Marcus, Boxerman & Chatman, LLP, for their

Complaint against the COOK COUNTY BUREAU OF HEALTH SERVICES,

ROBERT R. SIMON, M.D., AARON HAMB, M.D., and CLIFFORD CRAWFORD,

M.D. (hereinafter referred to collectively as "Defendants".

## NATURE OF ACTION

This is an action to address and correct: 1) unlawful

employment and other practices on the basis of race and sex,

including but not limited to violation of Title VII of the Civil

Rights Act of 1964, as amended, and the Equal Pay Act, 29 U.S.C.

§ 206 (d)(1);  2) the infringement of Plaintiffs' First Amendment

Right to free speech and to be free from retaliation for the

exercise of that right, in violation of 42 U.S.C. 1983; 3) the violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection under the Law in violation of 42 U.S.C. 1983; and 4) a conspiracy to deprive Plaintiffs' of their right to free speech, in violation of 42 U.S.C. 1985. Plaintiffs were adversely affected by Defendants' unlawful actions and seek the appropriate relief from this honorable court.

Plaintiff, **Vietta Johnson, M.D.**, (hereinafter "Dr. Johnson") alleges that Defendant, Cook County Bureau of Health, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1983, 42 U.S.C. 1985 and the Equal Pay Act, 29 U.S.C. § 206 (d)(1) by: (1)failing or refusing to allow her the same authority and working conditions allowed similarly situated non-Black and non-Female Division Chairman; (2) denying her the same compensation as similarly situated non-Black and non-Female Division Chairman; (3) subjecting her to a hostile work environment, including but not limited to sexual harassment; and (4) retaliating against her for exercising her right to freedom of speech by terminating her employment under the guise of a "reduction in force". Dr. **Johnson** further alleges that Defendants Robert R. Simon, M.D., Aaron Hamb, and Clifford Crawford, M.D. conspired to retaliate against her for exercising her freedom of speech and to deprive her of equal protection of the laws.

2

Plaintiff, **Daniel** Ivankovich, M.D., (hereinafter "Dr. Ivankovich") alleges that Defendant Cook County Bureau of Health, violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §1983 and 42 U.S.C. §1985 by: (1)subjecting him to a hostile work environment and discriminatory treatment in retaliation for his association with and support of Dr. Johnson; and (2) infringing upon his First Amendment Right to freedom of speech and retaliating against him for exercising that right by terminating his employment under the guise of a "reduction in force". Plaintiff, Dr. Ivankovich, further alleges that Defendants Robert R. Simon, M.D., Aaron Hamb and Clifford Crawford, M.D., conspired to retaliate against him for exercising his freedom of speech and to deprive him of equal protection of the laws.

Plaintiff, **Karen Nash, M.D.**, alleges that Defendant Cook County Bureau of Health, violated Title VII of the Civil Rights Act of 1964, as amended , 42 U.S.C. §1983, and the Equal Pay Act, 29 U.S.C. § 206 (d)(1), by: (1) denying her the same compensation as similarly situated non-Black and non-Female Division Chairman; (2) subjecting her to a hostile work environment; and (3) terminating her employment under the guise of a "reduction in force".

### JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28

3

U.S.C.§§451,1331,1337,1343, and 1345.  This action is authorized
and instituted pursuant to Title VII, 42 U.S.C. § 2000e, et.seq.,
42 U.S.C. §1983, 42 U.S.C. 1985 and the Equal Pay Act, 29 U.S.C.
§ 206 (d)(1).

2.  The employment practices hereafter alleged to be
unlawful were and are now being committed within the jurisdiction
of the United States District Court for the Northern District of
Illinois, Eastern Division.

3. More than 30 days prior to the institution of this
lawsuit, Plaintiffs filed charges of discrimination with the EEOC
alleging violations of Title VII and the Equal Pay Act by
Defendant, Cook County Bureau of Health. **(See attached hereto
collectively marked as Exhibit A, incorporated herein, and made a
part hereof by reference.)**  The U.S. Department of Justice issued
Notices of Right to Sue for all Plaintiffs on April 10, 2008.**(See
attached hereto collectively marked as Exhibit B, incorporated
herein, and made a part hereof by reference.)**  Defendant, Cook
County Bureau of Health terminated Plaintiffs' employment on
April 13, 2007, less than two years from the date of this filing,
as required by Section 1983.  All conditions precedent to the
institution of this lawsuit have been fulfilled.

4

**PARTIES**

4.    Plaintiff, VIETTA L. JOHNSON, was hired as the Director/Chair of the Division of Orthopedic and Podiatric Surgery at Defendant, Cook County Bureau of Health Services (hereinafter the "Bureau") in February of 1998.  The Bureau terminated her employment, purportedly as part of a Bureau-wide "reduction in force" on April 13, 2007.  On February 4, 2008, Dr. Johnson timely filed Charge Number 440-2008-02774 with the EEOC against the Bureau and she is expressly authorized to bring this action for race and sex discrimination by Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act, 29 U.S.C. § 206 (d)(1.  Dr. Johnson has also timely filed her causes of action for violation of her First Amendment right to free speech and equal protection of the law, pursuant to 42 U.S.C. 1983 and conspiracy retaliate against her for the exercise of her right to free speech and to violate her right to equal protection of the law, pursuant to 42 U.S.C 1985.

5.    Plaintiff, Daniel Ivankovich, M.D., was a surgeon in the Division of Orthopedic and Podiatric Surgery.  On February 4, 2008, Dr. Ivankovich timely filed Charge Number 440-2008-02793 with the EEOC against Defendant, Cook County Bureau of Health and he is expressly authorized to bring this action for discrimination and retaliation by Title VII of the Civil Rights

5

Act of 1964, as amended.  Dr. Ivankovich has also timely filed his cause of action for violation of his First Amendment right to free speech, pursuant to 42 U.S.C. 1983 and conspiracy pursuant to 42 U.S.C 1985.

6.  Plaintiff, Karen Nash, M.D., was an Oral and Maxillofacial Surgeon between February 1992 and April 13, 2007. On February 4, 2008, Dr. Nash timely filed Charge Number 440-2008-02794 with the EEOC against the Bureau of Health and she is expressly authorized to bring this action for race and sex discrimination by Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act, 29 U.S.C. § 206 (d)(1).

7.  At all times relevant, the Bureau has been one of the largest Public Health Systems in the country.  It is the second largest division of Cook County Government.  The Bureau has seven affiliates, including John H. Stroger Hospital Oak Forest Hospital and Provident Hospital. **(See Attached Web Page Marked Exhibit C.)**

8.  At all times relevant, Defendant Robert R. Simon, M.D. was Chief of the Bureau.

9.  At all times relevant, Aaron Hamb, M.D., was Chief Medical Officer at Provident Hospital.

10.  At all times relevant, Clifford Crawford, M.D., was the chairman of Department of Surgery at Provident Hospital.

11.  At all times relevant, the Bureau has continuously been

and is now an employer engaged in an industry affecting

commerce within the meaning of Sections 701(b), (g) and (h)

of Title VII, 42 U.S.C. Sections 2000e(b), (g) and (h).

## STATEMENT OF FACTS COMMON TO ALL COUNTS

12. The Bureau is charged with providing health services to

the more than five million people in need in Cook County,

Illinois.

13. The Bureau's own mission statement says that it will

ensure access to all those in need of services.

14. The Bureau has seven affiliates including: 1)Ambulatory

and Community Health Network of Cook County; 2)Cermak Health

Services of Cook County; 3)Cook County Department of Public

Health; 4)The Ruth M. Rothstein CORE Center; 5) John H. Stroger,

Jr. Hospital of Cook County; 6) Oak Forest Hospital of Cook

County; and 7) Provident Hospital of Cook County.

15. The Bureau's seven "affiliates" are not separate,

independent entities but are all part of the Bureau.

16. The Bureau, and therefore the medical care provided by

the Bureau, is supported by the citizens of Cook County via their

tax dollars.

17. Historically and currently, Cook County citizens who

seek health care within the Bureaus' healthcare system, have to

wait an excruciatingly long period of time for urgently needed medical procedures and years for non-urgent procedures. Citizens can wait in emergency rooms for days and more than twelve (12) hours to fill a prescription.

18. The Bureau claims that the long wait times and shortages of staff and equipment is due to lack of funding. However, the Bureau admits that it purchased and installed a computer system that did not allow for the billing of insurers and/or patients for the services that it provided.

19. The Bureau also has a long standing policy and practice of employing certain attending and resident physicians who actually work full time at other institutions, including but not limited to Loyola, Rush and University of Illinois, without requiring that they spend any significant amount of time caring for the Bureau's patients. This is used as a "perk" to get them to join the other institutions' staffs.

20. The Bureau also has a long standing practice of paying high level administrators/executives high six figure salaries while those same administrators/executives actually work one or more additional full time jobs at other institutions. Again, the Bureau's patients get the short end of the stick.

21. The Bureau has a long standing practice of excluding Blacks and women from management positions in the Bureau and, most recently, have concentrated the few Black administrators and

the majority of Black physicians at Provident Hospital of Cook
County.

22.  The Bureau has a long standing practice of underpaying
and overworking Black and female physicians within the Bureau.

23.  As a consequence of the Bureau's discriminatory and
unfair practices, the Physicians at Provident began union
organizing activities and have recently been successful in
forming a physician union.

24.  In 2007, the Bureau announced a purported "reduction in
force" which, by the applicable law and the Bureau's own
policies, require that lay-offs be carried out by seniority with
the least senior employee being laid off first.  It is also
required that the laid-off employees be recalled prior to hiring
new employees.

25.  The Bureau did not produce or provide any "lay-off"
plan.

26.  The Bureau did not carry out physician lay-offs in 2007
according to seniority ; Defendant, Robert R. Simon, initially
targeted Provident Hospital for a Fifty (50%) Percent
staff/services reduction whereas it set cuts at the rest of the
Bureau affiliates at Ten (10%) Percent.  (Plaintiffs Dr. Johnson
and Dr. Ivankovich protested so vehemently that the reduction was
reduced to 23%.) The Bureau targeted Provident Hospital, where it
had isolated almost all of the Black physicians within the

9

Bureau, for the most cuts.  Stroger Hospital has less than 8%
Black Physicians. Oak Forest Hospital has no Black Physicians.
Provident Hospital has the vast majority of Black Physicians
within the Bureau.

27. In contrast to the level of cuts, Provident was the most
active Bureau Affiliate in the area of Orthopedics and the most
productive financially.  It was the referral hospital for Stroger
Hospital for fractures, joint replacement, disorders of the
spine, feet and ankles.  Provident Hospital was also the
Orthopedic safety net for all of the south side hospitals
(Michael Reese, Jackson Park, St. Bernard, Oak Forest, Trinity,
South Shore and Roseland).

28.  At Provident Hospital, Orthopedics led all other
hospital departments for clinic billing and at one point billed
nearly $400,000.00 in four (4) months, excluding clinic
procedures, which totaled approximately 900 in one month.

29.  Still, the Bureaus surgically used the purported
"reduction in force" to target physicians at Provident Hospital,
which had a devastating effect on a disproportionate number of
Black physicians and staff.  Its main goal was to eliminate Dr.
Johnson and Dr. Ivankovich who were: 1)supportive of the
physicians' union organizing activities; 2)critical of the
Bureau's inability to bill for services provided; 3) critical of
the lack of resources earmarked for direct patient care; 4)

10

critical of the large amount of resources earmarked for non-patient care and executive/management salaries; 5) critical of the disparities in the salaries and other treatment of Black and female physicians and non-Black and male physicians **(See attached letter to Todd Stroger Marked Exhibit D)**.

30.   On April 13, 2007, the Bureau laid off Dr. Johnson, Dr. Ivankovich and Dr. Nash, in violation of the requirement that layoffs proceed from the least senior to the most senior.

31.   In order to get rid of Dr. Johnson and Dr. Ivankovich, the Bureau actually obliterated the entire division of Orthopedic and Podiatric Surgery at Provident Hospital, even though that division provided a huge percentage of the Orthopedic and Podiatric services to the poor and needy on the South Side of Chicago, as noted in paragraph 27 above, and with utter disregard for the health and welfare of that community that it was supposed to serve.

32.   While the Bureau claimed to discontinue Orthopedics at Provident Hospital, its words were false and its actions were pretextual, which was evidenced when the Bureau:  1) kept the podiatrist on staff, even though he could not admit patients on his own and required the supervision of an Orthopedic Surgeon; 2) kept most if not all of the Orthopedic support staff; 3) transferred an Orthopedic Surgeon from Stroger Hospital to Provident Hospital (who died shortly thereafter); 4) interviewed

11

Orthopedic Surgeons to replace Dr. Johnson and Dr. Ivankovich; 5) continued to advertise that Provident Hospital provided Orthopedic services; 6) failed or refused to recall Dr. Johnson and Dr. Ivankovich.

33.   Dr. Johnson and Dr. Ivankovich filed grievances against the Bureau for their wrongful "layoff"/termination stating that the Bureau had wrongfully ignored their seniority and wrongfully targeted them for termination for exercising their right to free speech in supporting the physicians' union organizing activities and being critical of actions on the part of the Bureau that were detrimental to the health and welfare of its patients.   The Bureau denied Dr. Johnson's and Dr. Ivankovich's grievances, ignoring the question of seniority, discrimination and retaliation.

## COUNT I
**Vietta L. Johnson, M.D.'s Claim Against the Cook County Bureau of Health Services for Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended**

34. Plaintiff, Vietta L. Johnson, M.D., incorporates by reference paragraphs 1 thru 33.

35. Defendant is an employer as defined by Title VII of the civil rights act of 1964, as amended, and unlawfully discriminated against Plaintiff based upon her race by: (1) paying her less than her non-Black colleagues and subordinates with inferior credentials and less seniority; (2) subjecting her

12

to unfounded and unsubstantiated verbal attacks regarding her competency and productivity while not subjecting her non-Black colleagues to the same; (3) marginalizing and undermining her role as Chairman of the Division of Orthopedic and Podiatric Surgery while not subjecting her non-Black colleagues to the same; (4) subjecting her to a hostile work environment; and (5) terminating her employment under the guise of a "reduction in force" with utter disregard for her seniority and productivity, in violation of the rules governing such "reduction in force" in the Bureau, whereas her non-Black colleagues were not so laid off.

36.  As a result of Defendant's illegal acts, Plaintiff was deprived of her right to be free from racial discrimination in the workplace.

37.  In direct violation of Title VII of the Civil Rights Act of 1964, as amended, the Defendant, by its agents and employees, engaged in race discrimination as described in the attached Charge of Discrimination.

38.  As a result of the Bureau's conduct, as aforesaid, Plaintiff has suffered injury to her career as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses for which she is entitled to compensatory damages pursuant to Title VII of the Civil Rights Act of 1964, as amended

13

WHEREFORE, Plaintiff, Vietta L. Johnson, M.D., prays for Judgment against the Cook County Bureau of Health Services, as follows:

A.    For an award of compensatory damages for Plaintiff's injury to her career, back pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

B.    For Attorneys Fees and costs of this suit, including expert witness fees;

C.    Front Pay;

D.    Pre-judgment interest in an amount to be determined at the time of trial; and

E.    For such other relief as is just and equitable.

## COUNT II
**Vietta L. Johnson, M.D.'s Claim Against the Cook County Bureau of Health Services for Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act, 29 U.S.C. § 206 (d)(1)**

39.    Plaintiff incorporates by reference paragraphs 1 thru 38.

40.    As a result of Defendant's discriminatory acts, Plaintiff received disparate treatment, including but not limited to:  1) being repeatedly and publically attacked regarding her

14

competency and productivity with no foundation whatsoever while her Male colleagues were never questions; 2) being paid less than her male colleagues and subordinates (with inferior credentials and less seniority; and 3) being subjected to inappropriate remarks by her superior, Clifford Crawford, M.D., e.g., " Why don't you just go home and be a mother?"

41. In direct violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act, the Defendant, by its agents and employees, engaged in Sex Discrimination as described in the attached Charge of Discrimination.

42. As a result of the Bureau's conduct, as aforesaid, Plaintiff has suffered injury to her career as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses for which she is entitled to compensatory damages pursuant to Title VII of the Civil Rights Act of 1964, as amended

**WHEREFORE**, Plaintiff, Vietta L. Johnson, M.D., prays for Judgment against the Cook County Bureau of Health Services, as follows:

A. For an award of compensatory damages for Plaintiff's injury to her career, back pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

15

B.    For Attorneys Fees and costs of this suit, including expert witness fees;

C.    Front Pay;

D.    Pre-judgment interest in an amount to be determined at the time of trial; and

E.    For such other relief as is just and equitable.

### COUNT III
**Vietta L. Johnson, M.D.'s and Daniel Ivankovich, M.D.'s Claim Against the Cook County Bureau of Health Services, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D. for infringement upon their First Amendment Right to Free Speech, to be Free From Retaliation for the Exercise of that Right and their Right to Equal Protection Under the Law**

43.    Plaintiffs, Vietta L. Johnson, M.D. and Daniel Ivankovich, M.D. hereby incorporate by reference paragraphs 1 thru 42.

44.    Plaintiffs were: 1)openly and vociferously supportive of the physicians' union organizing activities; 2)critical of the Bureau's inability to bill for services provided; 3) critical of the lack of resources earmarked for direct patient care; 4) critical of the large amount of resources earmarked for non-patient care and executive/management salaries; 5) critical of the disparities in the salaries and other treatment of Black and female physicians as opposed to non-Black and male physicians.

45.    As a consequence of Plaintiffs' exercise of their freedom of speech in the above noted areas, Defendants targeted

16

Plaintiffs for discriminatory treatment and retaliation, including the termination of their employment under the guise of a "reduction in force".

46. The unlawful employment practices complained of above were intentional.

47. By virtue of the foregoing, Cook County Bureau of Health Services, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D., acting under color of law, has infringed upon Plaintiffs' right to freedom of speech, as guaranteed by the First Amendment to the Constitution of the United States and Article I, §4 of the Constitution of the State of Illinois, and unlawfully retaliated against them for exercising that right, in violation of 42 U.S.C. 1983.

48. By virtue of the foregoing, Cook County Bureau of Health Services, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D., acting under color of law, has violated Plaintiffs' right to equal protection of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States, thereby violating 42 U.S.C. 1983.

49. Because of the individual Defendants' reckless disregard and deliberate practice of discriminating against Plaintiffs, punitive damages are appropriate and should be awarded to punish the individual Defendants' behavior and deter future misconduct.

17

WHEREFORE, Plaintiffs, Vietta L. Johnson, M.D. and Daniel Ivankovich pray for Judgment against the Cook County Bureau of Health Services, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D, as follows:

A.　For an award of compensatory damages in an amount to be determined at trial, not less than $500,000.00.

B.　For Attorneys Fees and costs of this suit, including expert witness fees;

C.　Punitive Damages against individual Defendants; and

D.　For such other relief as is just and equitable.

## COUNT IV

**Vietta L. Johnson, M.D.'s and Daniel Ivankovich's Claim Against Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D. for conspiracy to deprive Plaintiffs' of their Right to Free Speech and Equal Protection Under the Law, Pursuant to 42 U.S.C. 1985**

50.　Plaintiffs, Vietta L. Johnson, M.D. and Daniel Ivankovich, M.D. hereby incorporate by reference paragraphs 1 thru 49.

51.　The decision to feign the discontinuation of the Orthopedic and Podiatric Surgery Division at Provident Hospital and to wrongfully terminate Plaintiffs' employment was planned and implemented in concert by Robert R. Simon, M.D., Aaron Hamb, M.D., and Clifford Crawford, M.D.

18

52.  Prior to the "lay-offs" on April 13, 2007, Dr. Simon's agent, the Chief of Orthopedics at Stroger Hospital, Mark Gonzalez, M.D., told Dr. Ivankovich that the Bureau would keep him on but "just wanted to get rid of Dr. Johnson" because she was a "trouble maker". Dr. Gonzalez then asked Dr. Ivankovich to write a letter to Richard Keen, M.D., the then Bureau Chief of Surgery.

53.  Dr. Ivankovich did write a letter, but he praised Dr. Johnson and described her dedication to Cook County and recited all of the good work that she had done and that he had done.

54.  Shortly after writing that letter, the Bureau notified Dr. Ivankovich that he was being terminated due to "budget cuts".

55.  The true reason for the Dr. Johnson's and Dr. Ivankovich's termination was their vocal support for the unionization of physicians at Provident, their protestation of disproportionate and unfair cuts at Provident, and their complaints regarding financial mismanagement and abuse at the Bureau, as set out above.

56.  Drs. Simon, Hamb and Crawford wrongfully conspired to rid themselves and the Bureau of Dr. Johnson and Dr. Ivankovich.

57.  By virtue of the foregoing, Robert R. Simon, M.D., Aaron Hamb, M.D. and Clifford Crawford, M.D., acting under color of law, has violated Plaintiff's right to freedom of speech,  as guaranteed by the First Amendment to the Constitution of the United States and

19

Article I, §4 of the Constitution of the State of Illinois, thereby violating 42 U.S.C. 1985.

58.    By virtue of the foregoing, Cook County Bureau of Health Services, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D., acting under color of law, has violated Plaintiffs' right to equal protection of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States, thereby violating 42 U.S.C. 1985.

59.    Because of Defendant's reckless disregard and deliberate practice of discriminating against Plaintiffs, punitive damages are appropriate and should be awarded to punish Plaintiff's behavior and deter future misconduct.


WHEREFORE, Plaintiffs, Vietta L. Johnson, M.D. and Daniel Ivankovich pray for Judgment against Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D, as follows:

A.    For an award of compensatory damages in an amount to be determined at trial, not less than $500,000.00.

B.    For Attorneys Fees and costs of this suit, including expert witness fees;

C.    Punitive Damages;  and

D.    For such other relief as is just and equitable.

## COUNT V
### Daniel Ivankovich, M.D.'s Claim Against the Cook County Bureau of Health Services for Race/Sex Discrimination/Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended

60.     Plaintiff Daniel Ivankovich, M.D. hereby incorporate by reference paragraphs 1 thru 59.

61.     Plaintiff witnessed and protested Defendants' unlawfully discrimination against Plaintiff Vietta L. Johnson based upon her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, including but not limited to the Defendants

(1)  paying her less than her non-Black colleagues and subordinates with inferior credentials and less seniority; (2) subjecting her to unfounded and unsubstantiated verbal attacks upon her competency and productivity while not subjecting her non-Black colleagues to the same; (3) marginalizing and undermining her role as Chairman of the Division of Orthopedic and Podiatric Surgery while not subjecting her non-Black colleagues to the same; and (4) subjecting her to a hostile work environment; and (5) terminating her employment under the guise of a "reduction in force" with utter disregard for her seniority and productivity, in violation of the rules governing such "reduction in force" in the Bureau, whereas her non-Black colleagues were not so laid off.

62.  Plaintiff openly associated with Plaintiff Vietta L. Johnson, supported her and refused to unfairly criticize or attack her competency and productivity.

63.  In retaliation for Plaintiff's association with and support of Dr. Vietta L. Johnson, Plaintiff was, by association, discriminated against and terminated from his employment under the guise of a "reduction in force".

64.  In direct violation of Title VII of the Civil Rights Act of 1964, as amended, the Defendant, by its agents and employees, engaged in race discrimination, sex discrimination and retaliation, as described in the attached Charge of Discrimination.

65.  As a result of the Bureau's conduct, as aforesaid, Plaintiff has suffered injury to his career as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses for which he is entitled to compensatory damages pursuant to Title VII of the Civil Rights Act of 1964, as amended

WHEREFORE, Plaintiff, Daniel Ivankovich, M.D., prays for Judgment against the Cook County Bureau of Health Services, as follows:

A.  For an award of compensatory damages for Plaintiff's

22

injury to her career, back pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

B.     For Attorneys Fees and costs of this suit, including expert witness fees;

C.     Front Pay;

D.     Pre-judgment interest in an amount to be determined at the time of trial; and

E.     For such other relief as is just and equitable

### COUNT VI
**Karen Nash, M.D.'s Claim Against the Cook County Bureau of Health Services for  Race and Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act, 29 U.S.C. § 206 (d)(1)**

66.   Plaintiff incorporates by reference paragraphs 1 thru 65.


67.   As a result of Defendant's discriminatory acts, Plaintiff received disparate treatment, including but not limited to:  1) being paid less than her male colleagues and subordinates; 2) being subjected to a hostile work environment; 3) being repeatedly left out of the budget by Defendant Clifford Crawford, M.D.; and 4) being terminated under the guise of a "reduction in force" on April 13, 2007.

68.    In direct violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act, the Defendant, by its agents and employees, engaged in Race and Sex Discrimination as described in the attached Charge of Discrimination, attached hereto as Exhibit A.

69.    As a result of the Bureau's conduct, as aforesaid, Plaintiff has suffered injury to her career as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses for which she is entitled to compensatory damages pursuant to Title VII of the Civil Rights Act of 1964, as amended

WHEREFORE, Plaintiff, Karen Nash, M.D., prays for Judgment against the Cook County Bureau of Health Services, as follows:

A.    For an award of compensatory damages for Plaintiff's injury to her career, back pay, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

B.    For Attorneys Fees and costs of this suit, including expert witness fees;

C.    Front Pay;

D.    Pre-judgment interest in an amount to be determined at the time of trial; and

E.   For such other relief as is just and equitable.

Respectfully submitted,

_____
One of the Attorneys for Plaintiff

Linda C. Chatman
**MARCUS, BOXERMAN & CHATMAN, LLP**
19 S. LaSalle
Suite 1500
Chicago, Illinois 60603
312-917-1005

25

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | 440-2008-02793 |
| X | EEOC | |

State or local Agency, if any _____ and EEOC

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Dr. Daniel Ivankovich | 312-485-6343 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 101 W. Grand, Suite 200, Chicago, Illinois 60610 | 11-23-63 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Cook County Bureau of Health | 7 500 | 312-864-6820 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 1900 W. Polk, Suite 220, Chicago, Illinois 60612 | Cook |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE EARLIEST (ADEA/EPA)     LATEST (ALL) |
|---|---|
| [X] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] AGE<br>[X] RETALIATION   [ ] NATIONAL ORIGIN   [ ] DISABILITY   [X] OTHER (Specify) EPA | April 13, 2007<br><br>[ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in or around the Fall of 2002. My original and most recent position with Respondent was Surgeon in the Division of Orthopedic & Podiatric Surgery. Respondent terminated my employment on April 13, 2007, purportedly as part of a reduction in force due to budget cuts. My immediate Supervisor throughout my employment was Vietta Johnson, M.D., I was also supervised by Clifford Creaford, M.D., Chairman of the    Department of General Surgery.

RECEIVED

FEB 04 2008

See Attached Details

CHICAGO DISTRICT OFFICE

I believe that I have been discriminated against for associating with and supporting Vietta Johnson, M.D. who was discriminated against on the basis of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>*Daniel Ivankovich*<br>Date 2-4-08   Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br>*Daniel Ivankovich*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)<br>February 4, 2008 |

EEOC FORM 5 (Test 10/94)

OFFICIAL SEAL
KIM CLEVELAND
NOTARY PUBLIC, STATE OF IL
MY COMMISSION EXPIRES 8-

EXHIBIT
A

Daniel Ivankovich, M.D.
The Cook County Bureau of Health/ Provident Hospital of Cook County
1900 W. Polk, Suite 220
Chicago, IL 60612
312-864-6820

Page 2

Throughout my employment, and at the time of my termination, Dr. Johnson was the only full-time African American and the only female orthopedic surgeon in the Cook County Bureau of Health's Division of Orthopedic Surgery. And, during my employment, I repeatedly witnessed Dr. Johnson being harassed and discriminated against on the basis of her race and sex. Examples of this included, but was not limited to the following:  Cook County paying Dr. Johnson less than non-Black and male colleagues and subordinates;  Department Chairman for General Surgery, Clifford Crawford, repeatedly and publically attacking Dr. Johnson's competency and productivity with no foundation whatsoever while never questioning any non-Black or male division head or physician;  Department Chairman for General Surgery, Clifford Crawford, repeatedly and publically setting a double/higher standard for Dr. Johnson as opposed to non-Black and male Division Chairs and physicians; Cook County Bureau Chief and others generally treating Dr. Johnson in a discriminatory and disparate manner from non-Black, male physicians and Division Chairman; and Clifford Crawford, M.D. publically making sexist comments to Dr. Crawford, e.g., "Why don't you just go home and be a mother". When I would not support Dr. Crawford's denial of wrongdoing regarding that statement, he targeted me for harassment as well and called me a "lilly livered, yellow bellied coward".

Prior to the "layoffs" in April of 2007, Dr. Mark Gonzalez told me that Cook County wanted to keep me on and I should write a letter to Richard Keen, the Bureau Chief of Surgery, stating that I was committed to Cook County and its patients. After asking me if I was recording the conversation and stating that he would deny it if I repeated anything he said, Dr. Gonzalez further stated that Cook County just wanted to "get rid of Dr. Johnson". He went further to describe her as a "troublemaker". I did write a letter, but I included the truthful praise of Dr. Johnson and described her dedication, and my own, to Cook County and all of the productive work that we have done.

After writing that letter, Cook County notified me that I was being terminated due to "budget cuts". Purportedly, a lay-off plan had been prepared and approved in accordance with the "Cook County Rules and Regulations". However, Cook County never produced any "lay-off plan" and the "Cook County Rules and Regulation" require that lay-offs proceed from least senior to most senior. Furthermore, it requires that laid off employees be recalled from most senior to least senior. I followed Cook County procedures and filed a grievance regarding my inappropriate lay-off. During that grievance, in August of 2007, Cook Count admitted that there was no specific lay-off plan and the lay-offs were supposed to be carried out strictly on a seniority basis. Furthermore, in the face of direct evidence that the layoffs were not carried out on a seniority basis, Cook County admitted that I was not laid off on the basis of seniority.

Cook County's defenses were as follows:  1) The layoff was not bureau wide (which is patently false); 2) There is no bureau-wide Division of Orthopedic and Podiatric Surgery (which is patently false); and 3) Cook County just happened to decide to eliminate the entire Division

CHARGE OF DISCRIMINATION (CONT.)

Daniel Ivankovich, M.D.
The Cook County Bureau of Health/ Provident Hospital of Cook County
1900 W. Polk, Suite 220
Chicago, IL 60612
312-864-6820

Page 3

of Orthopedic and Podiatric Surgery, where Dr. Johnson just happened to be Chief, due to budget cuts, even though Orthopedic Surgery was the most productive division in the hospital. That is incredible on its face.

In response to Cook County's specious defenses, the facts are as follows: 1) the 2007 layoff was bureau wide, however, Cook County used the layoffs to target specific individuals, including me and African American physicians at Provident Hospital. The budget reduction was supposed to be 10% Bureau Wide but, by order of the "Bureau Chief", Dr. Robert R. Simon, Provident Hospital was hit with a 23% reduction (Note: Dr. Simon actually wanted a 50% reduction at Provident Hospital where the County had "isolated" almost all of the African American physicians within the County System with Stroger hospital having less than 8% African American physicians); 2) the hospitals and facilities in the Cook County system are all under the umbrella and authority of Cook County - they are not individual entities unto themselves, with all physicians in the Cook County system credentialed by one "Joint Credentialing Committee"; and 3) Cook County had no intention of actually eliminating the Division of Orthopedics at Provident Hospital when they terminated my employment. Cook County kept the podiatrist, who could not even admit patients to the hospital on his own and could not do what orthopedic surgeons could do, and kept most if not all of the orthopedic support staff. And, even more telling, after "laying me off", Cook County quickly transferred an orthopedic surgeon from Stroger Hospital to Provident to do orthopedics, Dr. Allen Malk, but he passed away shortly thereafter. Cook County then started interviewing orthopedic surgeons to replace me. And, Cook County continued to advertise in the local papers that Provident Hospital had orthopedic services. The purported elimination of the Division of Orthopedic and Podiatric Surgery at Provident Hospital was a cruel ruse and conspiracy to get rid of Dr. Johnson, and me for supporting her, which injured the multitude of patients who depend on the orthopedic services at Provident Hospital.

I believe that I have been discriminated against for associating with and supporting Vietta Johnson, M.D. who was discriminated against on the basis of her race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

THE BOARD OF COMMISSIONERS

TODD H. STROGER

PRESIDENT



| | | | |
|---|---|---|---|
| EARLEAN COLLINS | 1st Dist. | PETER N. SILVESTRI | 9th Dist. |
| ROBERT STEELE | 2nd Dist. | MIKE QUIGLEY | 10th Dist. |
| BUTLER | 3rd Dist. | JOHN P. DALEY | 11th Dist. |
| AVIS BENERS | 4th Dist. | FORREST CLAYPOOL | 12th Dist. |
| DEBORAH SIMS | 5th Dist. | LARRY SUFFREDIN | 13th Dist. |
| JOAN PATRICIA MURPHY | 6th Dist. | GREGG GOSLIN | 14th Dist. |
| JOSEPH MARIO MORENO | 7th Dist. | TIMOTHY O. SCHNEIDER | 15th Dist. |
| ROBERTO MALDONADO | 8th Dist. | ANTHONY J. PERAICA | 16th Dist. |
| | | ELIZABETH ANN DOODY GORMAN | 17th Dist. |

BUREAU OF HUMAN RESOURCES
OF COOK COUNTY

KIM DAVID GILMORE
CHIEF OF HUMAN RESOURCES

County Building
118 North Clark Street
Chicago, Illinois 60602-1304
(312) 603-3380 TEL
(312) 603-5484 FAX
(312) 603-5255 TDD

April 10, 2007

DANIEL A IVANKOVICH
P.O. BOX 2278
GLENVIEW, IL 60025

**Re:     Layoff due to Budget Cuts**

Dear DANIEL IVANKOVICH:

Cook County Government has experienced significant budgetary constraints, which has required staff reductions. To accomplish this, a layoff plan has been prepared and approved in accordance with the Cook County Rules and Regulations and any applicable collective bargaining agreement. We regret to inform you that your position is among those affected. Effective at the close of business on April 13, 2007 you will be laid off.

Included with this letter, is a summary of services from the Illinois Department of Employment Security, summary of employee benefits termination provisions, an Employee Assistance Program (EAP) brochure detailing services that are provided and the Cook County President's Office of Employment Training material. Your final pay check will include unused vacation time.

Please accept my gratitude on behalf of the County for your valued service.

Sincerely,

Kim David Gilmore
Bureau Chief

cc:     Personnel File

**TODD H. STROGER**
PRESIDENT

EARLEAN COLLINS        1st Dist.
ROBERT STEELE          2nd Dist.
JERRY BUTLER           3rd Dist.
WILLIAM M. BEAVERS     4th Dist.
DEBORAH SIMS           5th Dist.
JOAN PATRICIA MURPHY   6th Dist.
JOSEPH MARIO MORENO    7th Dist.
ROBERTO MALDONADO      8th Dist.

PETER N. SILVESTRI         9th Dist.
MIKE QUIGLEY              10th Dist.
JOHN P. DALEY            11th Dist.
FORREST CLAYPOOL          12th Dist.
LARRY SUFFREDIN          13th Dist.
GREGG GOSLIN             14th Dist.
TIMOTHY O. SCHNEIDER     15th Dist.
ANTHONY J. PERAICA       16th Dist.
ELIZABETH ANN DOODY GORMAN  17th Dist.



**BUREAU OF HUMAN RESOURCES**
OF COOK COUNTY

**KIM DAVID GILMORE**
CHIEF OF HUMAN RESOURCES

County Building
118 North Clark Street
Chicago, Illinois 60602-1304
(312) 603-3300 TEL
(312) 603-5404 FAX
(312) 603-5255 TDD

October 2, 2007

Dr. Daniel Ivankovich
101 West Grand Avenue, #200
Chicago, IL 60610

**RE:    LAYOFF HEARING for DR. DANIEL IVANKOVICH**
**Represented by ATTORNEY LINDA CHATMAN**
**PROVIDENT HOSPITAL**
**DATE OF HEARING – AUGUST 17, 2007**
**CASE # HR07-07-05**

In Attendance:

| | |
|---|---|
| Grievant: | Dr. Daniel Ivankovich, Attending Physician |
| Attorney: | Ms. Linda Chatman |
| | |
| Management: | Dr. Aaron Hamb, Chief Medical Officer-Provident |
| | Dr. Mark Gonzalez, Chief of Orthopedics-Stroger |
| | Dr. Clifford Crawford, Chair, Dept. of Surgery-Provident |
| | Dr. Richard Keen, Associate Chair, Surgery-Stroger |

Issue:

Dr. Daniel Ivankovich received a layoff notice in April 2007 stating that his position,
Physician at Provident Hospital's Department of Orthopedic Surgery, had been
eliminated due to budgetary constraints causing management to eliminate his entire
department.

Management's Position:

Dr. Hamb, Chief Medical Officer at Provident Hospital, presented for management. He
stated that the hospital was mandated by the Cook County Board to achieve certain
reductions in spending. Dr. Hamb emphasized that he reviewed reduction options for
Provident Hospital only and that he did not have the authority or instruction to consider
reductions on a bureau-wide basis.
Dr. Hamb asserted that the Orthopedic Department to which Dr. Ivankovich belonged
was eliminated completely based on a lower amount of activity and productivity than
other departments at Provident Hospital. He stated there were other departments that
were also eliminated in full.

Page 2

Management's Position (con't.):

Dr. Hamb stated that there were many staff meetings and consultations regarding the budget cuts but that the final decisions were made by Mr. Fairman (the then Chief Operating Officer of Provident Hospital), Dr. Simon (the Chief of the Bureau of Health) and himself during January and/or February of 2007.

Grievant's Position:

Dr. Ivankovich stressed his commitment to serving the poor in their own community which he felt was being accomplished in his time at Provident Hospital.
Dr. Ivankovich believes he was improperly laid off and that there was insufficient attention paid to his seniority, education, qualifications and productivity compared to some of his counterparts who were kept on staff. He believes that he was unfairly targeted for elimination due to his activities in organizing a physicians' union and for public comments made against the policies of Health Bureau Chief, Dr. Simon.
His attorney, Ms. Linda Chatman, stated that she viewed the reductions as county-wide and bureau-wide and that the statement from management that they were considered only on a facility-wide basis is disingenuous.
Ms. Chatman pointed out that Provident Hospital had more minority physicians than Stroger so that staff reductions at Provident would have a disproportionate impact on minority employment throughout the Health Bureau.
She stated that Dr. Ivankovich had offered to stay on staff on a voluntary basis but heard no response from management.
Ms. Chatman maintained that the Grievant's department had generated billing and revenue from their patients.
She stated that it was her understanding that patients were now being made to endure wait times of one year or more for services previously provided by Dr. Ivankovich and his departmental colleagues at Provident Hospital.
Ms. Chatman said that she had been told that the hospital was looking to fill the positions vacated by Dr. Ivankovich and others in his department.
They are seeking re-instatement with full back pay and benefits.

Findings:

Dr. Hamb denied the assertions of the Grievant and his attorney and pointed out that they provided no proof. He re-stated that his decision to eliminate Dr. Ivankovich's department was made without bias and that his efforts on behalf of the hospital were appreciated. Management was forced into a very difficult decision and believed that Stroger Hospital could and would absorb the services that had previously been provided at Provident.

6  125th Anniversary Special Section, August 15, 2007



# Barnes & Noble in Hyde Park? (yes, it's true!)

Enjoy all the benefits of your Barnes & Noble membership without the trip Downtown!

Member benefits include:

**40% off** List — Hardcover Bestsellers

**20% off** List — Adult Hardcovers* including cookbooks, art books, fiction, non-fiction and much more

**10% off** — already discounted items, bargain books, childrens books, paperbacks, Starbucks Cafe, University of Chicago apparel & gifts, school supplies, greeting cards and more.

*excludes medical & professional reference & course materials, other exclusions may apply.

We're located at Ellis & 58th, in the heart of the beautiful University of Chicago campus.

**BRING IN THIS AD FOR A FREE TALL COFFEE/TEA IN OUR STARBUCKS CAFE!**
offer valid through 09/01/07

THE UNIVERSITY OF
# CHICAGO BOOKSTORE

970 e. 58th / 773.702.7712 / uchicago.bkstore.com / open m-f 8-6  sat 9-4

STARBUCKS COFFEE — proudly brewing

---

## Alive and Well

Cook County
Illinois 60615

**Celebrating 14 Years of Community Excellence**



### Services

Asthma Clinic
Cardiology
Critical Care
Dermatology
Diabetic Clinic
Emergency Medicine
HIV Primary Care
Infectious Disease
Internal Medicine
Neurology
Obstetrics/Gynecology
Orthopedics
Pathology
Pediatrics
Physical Therapy
Podiatry
Radiology
Same Day Surgery
Speech Therapy
Surgery
Urology



Provident Hospital
of Cook County

**CCBHS
Diversity Task Force**

Presentation to Bureau Management
06/17/2004

---

1. **Background of CCBHS
Diversity Task Force**

   a) Effort of many in Bureau
   b) Bureau leadership support
   c) Members represent Bureau

---

**Diversity/Cultural Competence Efforts:**

1. Kaiser Permanente
2. Denver Public Health System
3. All other public health systems

---

**Overview of Talk:**

1. CCBHS/Cook County demographics
2. Uninsured data
3. Health Disparities
4. Race Concordant Patient Care
5. CCBHS/Physician/Nursing/Clerical Data
6. CCBHS Diversity Task Force Statement/Recommendations

---

2. **CCBHS patient population**

   a) About 65% African-American
   b) About 25% Hispanic
      - About 80% Mexican
      - About 18% Central Americans and Puerto Ricans
      - About 2% others
   c) About 10% other

---

3. **Cook County Demographics** (2000 census)

   a) 5.4 million people, 2nd largest in US
   b) 1.4 million African-American (26%) -largest in US county
   c) 1.1 million Hispanic (20%) -4th largest in US

      -Chicago 2nd largest in US

1

4.   Health Care Needs of CCBHS patients

   a)   Uninsured / Underinsured





Question: If there are more White uninsured patients in Cook County (than AA or Hispanic), why do they only represent about 5% of the CCBHS patient population?

5.   Health Disparities

- Potentially curable lung cancer
  (Bach P. et al. NEJM 1999;341:1198-1205)

  - 77% of White patients get surgery

  - 64% of Black patient get surgery

Eye exam for diabetics with Medicare
(Blustein J. et al. J Health Care Poor & Underserved 1998;9:153-169)

- 46% of Whites

- 35% of Blacks


Adequate cancer pain treatment
(Cleveland C; et al. Annals of Int Med 1997;127:813-816)

- 50 of Whites

- 41% of Blacks

- 26% of Hispanics


Renal transplantation
(Epstein A, et al. NEJM 2000;343:1537-1544)

- 52% of Whites

- 17% of Blacks


Medicare treatment differences
(Lee A, et al, Medical Care 1997;35:1173-1189)

- CABG 2.9 times more likely in Whites than Blacks

- Angioplasty 2.8 times...

- Arthroscopy 2.0 times...

- Cataract 1.33 times...


Adequate immunizations
(Ronsaville D, et al, Am J Public Health 2000;90:1436-1443)

- 64% if White infants

- 42% of African-Americans

- 49% of Hispanics


Treatment of depressed patients
(Sirey J. et al. Am J Psychiatry 1999;156:690-696)

- 84% of White patients

- 30 of Black

- 56 of Hispanic

6. **Studies on Concordance of Patient and Physician Race:**

---

• Cooper LA, et al. Ann Intern Med. 2003 Dec. 2;139 (11):907-15

- African-American patients spend more time with AA providers (2.15 min.)

- AA patients rate race concordant visits more positively

- Effect not explained by communication content

- Possibly an attitude issue between provider / patient

---

• Cooper-Patrick L, et al. JAMA 1999 Aug 11;282(6):583-9

- AA patients seeing AA providers rate their physicians' decision-making styles as more participatory, compared to those seeing White physicians.

---

• La Veist TA, et al. J Health Soc Behav. 2002 Sep;43(3):296-306

- National sample of AA, White, Hispanic, and Asian American respondents.

- All groups rated race-concordant care with greater satisfaction than race-discordant care.

---

• La Veist TA, et al. J Natl Med Assoc. 2002 Nov;94(11):937-43

- AA patients with higher income and with a choice were more likely to have AA physicians.

- AA patients receiving race-concordant care reported a higher level of satisfaction.

---

• Murray-Garcia JL, et al. Acad Med 2001 Dec;76(12):1232-40.

- AA, Asian, and Latino residents see disproportionate numbers of patients from their own racial or ethnic backgrounds.

- Not completely explained by language proficiencies.

- Race and ethnicity may be highly valued by patients

4

- Komaromy M. et al. N Engl J Med 1996;334:1305-10.

  - AA and Hispanic physicians see 2-5 times more patients of their own race/ethnicity than other physicians.

- Morales LS, et al. J Gen Intern Med 1999;14:409-417.

  - Spanish speaking patients are not satisfied with the provider communication they encounter.

- Bottom Line:

  - Patients value care highly from providers who look like them, talk like them, have similar backgrounds and culture.

7. **CCBHS Physician Data:**

  - 40.8% of physicians are White (national about 80%)

  - Asians 23.9%.

  - African-Americans 15% (due to Provident and ACHN).

  - Hispanics 4.2% (Mexicans 1.3%)

- **Stroger Hospital** (60% of physicians)

  - 50% White

  - 7.9 % AA

  - 4.7 % Hispanic

- **Provident and ACHN**

  - About 40% AA or Hispanic

5

**Oak Forest Hospital**

- 63% Middle Eastern or Asian

- 21% White

---

**Observations:**

---

- Provident and ACHN have higher minority physician representation.
- Effect multi-factorial, but in large part due to the medical and administrative leadership (minorities more likely to recruit and hire minorities).
- Recruiting and hiring of AA and Hispanic physicians doable, but still a big task:
  - Minority leadership more connected to this group.
  - Number of AA and Hispanic physicians decreasing nationally since 1990.
  - State schools in CA, TX, others cut minority med school #'s drastically.
  - More foreign graduates joining our medical system.
  - The CCBHS needs to do better ("We need to do better," per Mrs. Rothstein).

---

8.    Nursing / clerical CCBHS data

---

**ETHNIC BREAKDOWN**
**NURSING STAFF ONLY (CNI/CNII)**

Six months ago, in November of 2003, we collected data on the ethnic breakdown of nurses in CNI and CNII positions throughout the bureau.

November, 2003

| Affiliate | White | Black | Hispanic | Asian |
|---|---|---|---|---|
| Hospital | | | | |
| ACHN | | | | |
| Fantus Clinic | | | | |
| CORE Center | | | | |
| Provident | | | | |
| Oak Forest | | | | |
| Total for all Affiliates | | | | |

The following is an update on these statistics, focused on Hispanic/Bilingual nurses only.

| Affiliate | Jan - 2003 | Mar - 2004 | % Increase (Decrease) |
|---|---|---|---|
| Hospital | | | |
| ACHN | | | |
| Fantus Clinic | | | |
| CORE Center | | | |
| Provident | | | |
| Oak Forest | | | |
| Total for all Affiliates | | | |

---

9.    CCBHS Diversity Task Force Statement Concerning Medical Staff Representation:

# 3. Cultural and linguistic skills  and competence are important considerations in the recruitment and hiring of medical staff.
# 5 and # 11 Communication with CCBHS COOs and Medical Directors. department and division needs.
# 6. CCBHS Affiliates to prepare a report every six months (due Dec. 15 and June 15).
# 7. Report to Bureau Management every six months.
# 8. Recruitment and hiring, posting of positions.  Task force needs to develop resource list for medical departments.
# 12. Residency and fellowship programs. Also increase AA / Hispanic representation, train our providers of the future.

# ETHNIC BREAKDOWN
## NURSING STAFF ONLY (CNI/CNII)

Public Health has three (3) additional Hispanic/bilingual candidates that have been selected for hire and are to begin in June, 2004. By June, the percentage (%) of increase will then be 47% for Public Health.

Currently the three affiliates that demonstrate an increase in the hiring of Hispanic/bilingual nurses are: John H. Stroger Hospital, Ambulatory and Community Health Network (ACHN), and Public Health.

Hispanic nurses in the CNI/CNII category make up **5%** of the total filled positions for this category (up from **4%** in November 2003). Although it appears to be a small increase when the large number of positions filled (**1376**) is Hispanic/bilingual RNs available.

Updates on ethnicity breakdowns for CNI and CNII positions will be conducted for all ethnic categories yearly (in October) and focused updates on Hispanic/bilingual nurses will also be done every six months (additional update in May).

## CCBHS Diversity Task Force
## Statement Concerning Medical Staff Representation

1.  The Cook County Bureau of Health Services (CCBHS) Diversity Task Force recognizes the importance of achieving cultural and linguistic competence to care for the CCBHS' diverse patient population, and is committed to achieving a diverse, representative staff that well serves patient populations' needs. The CCBHS is committed to hiring, retaining, and promoting under-represented medical staff.

2.  The Diversity Task Force supports and recommends the recruitment and hiring of high quality representative medical staff to care for the CCBHS' diverse patient population. The Diversity Task Force supports an open dialogue to raise collective awareness, understanding, and support for the CCBHS' commitment to diversity and equal opportunity.

3.  The Diversity Task Force believes that cultural and linguistic skills and competence are important considerations in the recruitment and hiring of medical staff.

4.  The Diversity Task Force will broadly disseminate diversity data.

5.  The Diversity Task Force will meet with the Chief Operating Officers and Medical Directors of the CCBHS Affiliates and offer their guidance and assistance toward addressing medical staff diversity issues.

6.  All CCBHS divisions will prepare a report every six months (due December 15 and June 15) to document the progress in staff representation. The report will be prepared on a spreadsheet made available by the Diversity Task Force. The report is to include the number of actual vacancies within occupational category or job title, and efforts in recruitment, retention, and promotion of underrepresented minorities. The report may also include a description of other efforts, such as policies or committees established to address medical staff diversity.

7.  The Diversity Task Force will report to Bureau Management every six months.

8.  The Diversity Task Force recommends that every CCBHS department/division discuss the importance and need to recruit/hire representative staff regularly at their department/division meetings.

9.  The Diversity Task Force encourages public posting of all employment opportunities and positions and encourages the utilization of the phrase "Cook County is an equal opportunity, affirmative action employer with a commitment to serving racially and ethnically diverse communities" on all such advertisements,

and request bilingual language skills when such skills are essential to service the patient population.

10. The CCBHS will consider applications by all qualified candidates and supports compliance with the Cook County Equal Employment Opportunity Policy, (the name of the new policy has not yet been determined. However, at this juncture, it will likely include EEO in the language) the Department of Health and Human Services guidelines on staff representation, the Cook County Human Rights Ordinance and all other state and federal statutes governing equal employment opportunities.

11. The Diversity Task Force will identify CCBHS departments/divisions with low staff representation. In conjunction with the Medical Director and Chief Operating Officer of any Bureau Affiliate identified, the Diversity Task Force will encourage the Bureau Affiliate to remove any existing barriers to the hiring of qualified individuals to address their staff representation shortcomings and offer assistance in accomplishing this goal.

12. The Diversity Task Force also recommends continued progress in increasing the level of awareness of representation issues in the residency and fellowship programs. Each program director will make an annual report to the Task Force on all developments concerning under-representation issues. Residency and fellowship programs are also encouraged to remove any existing barriers to program opportunities for qualified individuals of underrepresented groups.

13. The Diversity Task Force supports the utilization of both the J1 waiver process and the H1B visa program to increase employment opportunities for qualified physicians.

14. The Diversity Task Force will collaborate with outside agencies, schools, and organizations to develop external communication/recruitment pipelines concerning employment opportunities. The Diversity Task Force supports similar recruitment efforts by all CCBHS' Affiliates.

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2008-02794 |

| | and EEOC |
|---|---|

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.)<br>Dr. Karen Nash | HOME TELEPHONE (Include Area Code)<br>773-493-6687 | |
|---|---|---|
| STREET ADDRESS       CITY, STATE AND ZIP CODE<br>6858 S. Euclid, Chicago, Illinois 60649 | | DATE OF BIRTH<br>3-24-56 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>Cook County Bureau of Health | NUMBER OF EMPLOYEES, MEMBERS<br>> 500 | TELEPHONE (Include Area Code)<br>312-864-6820 |
|---|---|---|
| STREET ADDRESS        CITY, STATE AND ZIP CODE<br>1900 W. Polk, Suite 220, Chicago, Illinois 60612 | | COUNTY<br>Cook |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| STREET ADDRESS        CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)    LATEST (ALL) |
|---|---|
| ☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ AGE<br>☒ RETALIATION   ☐ NATIONAL   ☐ DISABILITY   ☒ OTHER (Specify)<br>ORIGIN                        EPA | April 13, 2007<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in or around February 1992. My position at the time of the alleged discrimination was Oral & Mixillofacial Surgeon. I was also the only Surgeon who performed Otolaryngotomy procedures for Respondent. Respondent terminated my emplyment on April 13, 2007, purportedly as part of a reduction in force due to budget cuts. My immediate Supervisor throughout my employment was Clifford Crawford, M.D., Chairman of the Department of General Surgery.

FEB 04 2008

EEOC CHICAGO DISTRICT OFC

See Attached Details

I believe that I have been harassed and discriminated against on the basis of my race and my sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date 2-4-08        Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)<br>February 4, 2008 |

EEOC FORM 5 (Test 10/94)

OFFICIAL SEAL
KIM CLEVELAND
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-2-2008

CHARGE OF DISCRIMINATION (CONT.)

Karen R. Nash, M.D.
The Cook County Bureau of Health/ Provident Hospital of Cook County
1900 W. Polk, Suite 220
Chicago, IL 60612
312-864-6820

Page 2

Throughout my employment, and at the time of my termination, I was the only full-time African American and the only female Oral and Maxillofacial Surgeon in the Cook County Bureau of Health's Division of Oral and Maxillofacial Surgery (hereinafter referred to as "Cook County"). I am Board Certified and was the only physician that did Otolaryngotomy procedures for Cook County. Throughout my employment, I have worked extremely hard to provide quality services to those in the most need of it, without regard for myself and, many times, in the face of discriminatory behavior on the part of Cook County. I worked seven (7) days per week with 24 hour per day call with only one (1) weekend off per month.

During my employment at Cook County, I was discriminated against on the basis of my race and sex. Specific instances of race and sex discrimination are as follows:

- I was paid less than my non-African American colleagues and subordinates with inferior credentials and less seniority;
- I was subjected to unfounded and unsubstantiated negative criticism of my competency and productivity by Clifford Crawford, M.D., (Chairman of General Surgery) which my non-African American colleagues were not subjected to;
- I was repeatedly left out of the budget by Clifford Crawford, M.D., while my male counterparts were not so treated; and
- I was laid off in April of 2007, without regard for my seniority and/or credentials in violation of the rules governing "reduction in force" in the Cook County Bureau of Health, whereas my non-African American colleagues were not so laid off.

Cook County's discriminatory behavior was witnessed by physicians and staff members within the Cook County medical facilities, including but not limited to Dr. Vietta Johnson, Dr. Dan Ivankovich, Dr. Carleton West and Dr. Manmohan Singh.

In April of 2007, Cook County notified me that I was being terminated due to "budget cuts". Purportedly, a lay-off plan had been prepared and approved in accordance with the "Cook County Rules and Regulations". However, this was just a "pretense", a false excuse to terminate my employment for discriminatory reasons. Cook County never produced any "lay-off plan" and the "Cook County Rules and Regulation" require that lay-offs proceed from leastsenior to most senior. Furthermore, it requires that laid off employees be recalled from most

CHARGE OF DISCRIMINATION (CONT.)

Page 3

senior to least senior.   I have 15 years of seniority at Cook County but, at the time of my "lay off"  and currently, there are physicians in my specialty working at Cook County with inferior credentials, less experience and less seniority than me.

I believe that I have been harassed and discriminated against on the basis of my race and my sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

## CCBHS
## Diversity Task Force

Presentation to Bureau Management
06/17/2004

---

1. **Background of CCBHS
   Diversity Task Force**

   a) Effort of many in Bureau
   b) Bureau leadership support
   c) Members represent Bureau

---

**Diversity/Cultural Competence Efforts:**

1. Kaiser Permanente
2. Denver Public Health System
3. All other public health systems

---

**Overview of Talk:**

1. CCBHS/Cook County demographics
2. Uninsured data
3. Health Disparities
4. Race Concordant Patient Care
5. CCBHS/Physician/Nursing/Clerical Data
6. CCBHS Diversity Task Force Statement/Recommendations

---

2. **CCBHS patient population**

   a) About 65% African-American
   b) About 25% Hispanic
      - About 80% Mexican
      - About 18% Central Americans and Puerto Ricans
      - About 2% others
   c) About 10% other

---

3. **Cook County Demographics** (2000 census)

   a) 5.4 million people, 2nd largest in US
   b) 1.4 million African-American (26%)
      -largest in US county
   c) 1.1 million Hispanic (20%)
      -4th largest in US
      -Chicago 2nd largest in US

1

- **Eye exam for diabetics with Medicare**
  (Blustein J, et al. J Health Care Poor & Underserved 1998;9:153-169)

  - 46% of Whites

  - 35% of Blacks

- **Adequate cancer pain treatment**
  (Cleveland C, et al. Annals of Int Med 1997;127:813-816)

  - 50 of Whites

  - 41% of Blacks

  - 28% of Hispanics

- **Renal transplantation**
  (Epstein A, et al. NEJM 2000;343;1537-1544)

  - 52% of Whites

  - 17% of Blacks

- **Medicare treatment differences**
  (Lee A, et al. Medical Care 1997;35:1173-1189)

  - CABG 2.9 times more likely in Whites than Blacks

  - Angioplasty 2.8 times...

  - Arthroscopy 2.0 times...

  - Cataract 1.33 times...

- **Adequate immunizations**
  (Ronsaville D, et al. Am J Pubic Health 2000;90:1436-1443)

  - 84% if White Infants

  - 42% of African-Americans

  - 49% of Hispanics

- **Treatment of depressed patients**
  (Sirey J, et al. Am J Psychiatry 1999;156:690-696)

  - 84% of White patients

  - 30 of Black

  - 56 of Hispanic

3

6.  **Studies on Concordance of Patient and Physician Race:**

---

- Cooper LA, et al. Ann Intern Med. 2003 Dec. 2;139 (11):907-16

  - African-American patients spend more time with AA providers (2.15 min.)

  - AA patients rate race concordant visits more positively

  - Effect not explained by communication content

  - Possibly an attitude issue between provider / patient

---

- Cooper-Patrick L, et al. JAMA 1999 Aug 11;282(6):583-9

  - AA patients seeing AA providers rate their physicians' decision-making styles as more participatory, compared to those seeing White physicians.

---

- La Veist TA, et al. J Health Soc Behav. 2002 Sep;43(3):296-306

  - National sample of AA, White, Hispanic, and Asian American respondents.

  - All groups rated race-concordant care with greater satisfaction than race-discordant care.

---

- La Veist TA, et al. J Natl Med Assoc. 2002 Nov;94(11):937-43

  - AA patients with higher income and with a choice were more likely to have AA physicians.

  - AA patients receiving race-concordant care reported a higher level of satisfaction.

---

- Murray-Garcia JL, et al. Acad Med 2001 Dec;76(12):1232-40.

  - AA, Asian, and Latino residents see disproportionate numbers of patients from their own racial or ethnic backgrounds.

  - Not completely explained by language proficiencies.

  - Race and ethnicity may be highly valued by patients

4

- Komaromy M. et al. N Engl J Med1996;334:1305-10.

  - AA and Hispanic physicians see 2-5 times more patients of their own race/ethnicity than other physicians.

- Morales LS, et al. J Gen Intern Med 1999;14:409-417.

  - Spanish speaking patients are not satisfied with the provider communication they encounter.

- Bottom Line:

  - Patients value care highly from providers who look like them, talk like them, have similar backgrounds and culture.

**7.  CCBHS Physician Data:**

  - 40.8% of physicians are White (national about 80%)

  - Asians 23.9%.

  - African-Americans 15% (due to Provident and ACHN).

  - Hispanics 4.2% (Mexicans 1.3%)

- **Stroger Hospital** (80% of physicians)

  - 50% White

  - 7.9 % AA

  - 4.7 % Hispanic

- **Provident and ACHN**

  - About 40% AA or Hispanic

5

- Oak Forest Hospital
  - 63% Middle Eastern or Asian
  - 21% White

Observations:

---

- Provident and ACHN have higher minority physician representation.
- Effect multi-factorial, but in large part due to the medical and administrative leadership (minorities more likely to recruit and hire minorities).
- Recruiting and hiring of AA and Hispanic physicians doable, but still a big task:
  - Minority leadership more connected to this group.
  - Number of AA and Hispanic physicians decreasing nationally since 1990.
  - State schools in CA, TX, others cut minority med school #'s drastically.
  - More foreign graduates joining our medical system.
- The CCBHS needs to do better ("We need to do better," per Mrs. Rothstein).

8.  Nursing / clerical CCBHS data

---

### ETHNIC BREAKDOWN
### NURSING STAFF ONLY (ON/ONII)

Six months ago, in November of 2003, we obtained data on the ethnic breakdown of nurses in ONI and ONII positions throughout the Bureau.

**November 2003**

| Affiliate | White | Black | Hispanic | Asian |
|---|---|---|---|---|
| Stroger | 33 | 59 | 14 | 149 |
| ACHN | 5 | 80 | 3 | 28 |
| Public Health | 27 | 23 | 11 | 5 |
| Cermak | 33 | 69 | 2 | 77 |
| Provident | 5 | 141 | 2 | 45 |
| Oak Forest | 9 | 9 | 1 | 2 |
| CORE | 0 | 0 | 0 | 0 |
| Total (%) of All Nurses | 112 (21%) | 381 (55%) | 33 (6%) | 91 (17%) |

The following is an update on these statistics, focused on Hispanic/% Hispanic nurses only.

| Affiliate | Nov. 2003 | Dec. 2003 | % Increase (Decrease) |
|---|---|---|---|
| Stroger | 13 | 13 | 0% |
| ACHN | | | 0% |
| Public Health | 11 | 11 | 0% |
| Cermak | | | 0% |
| Provident | 2 | 1 | 0% |
| Oak Forest | | | 0% |
| CORE | | | 0% |
| Total (%) of All Nurses | 33 | 33 | 0% |

---

9.  CCBHS Diversity Task Force Statement Concerning Medical Staff Representation

# 3. Cultural and linguistic skills and competence are important considerations in the recruitment and hiring of medical staff.
# 5 and # 11 Communication with CCBHS COOs and Medical Directors, department and division heads.
# 6. CCBHS Affiliates to prepare a report every six months (due Dec. 15 and June 15).
# 7. Report to Bureau Management every six months.
# 9. Recruitment and hiring, posting of positions. Task force needs to develop resources list for medical departments.
# 12. Residency and fellowship programs. Also increase AA / Hispanic representation, train our providers of the future.

# ETHNIC BREAKDOWN
## NURSING STAFF ONLY (CNI/CNII)

Public Health has three (3) additional Hispanic/bilingual candidates that have been selected for hire and are to begin in June, 2004. By June, the percentage (%) of increase will then be 47% for Public Health.

Currently the three affiliates that demonstrate an increase in the hiring of Hispanic/bilingual nurses are: John H. Stroger Hospital, Ambulatory and Community Health Network (ACHN), and Public Health.

Hispanic nurses in the CNI/CNII category make up **5%** of the total filled positions for this category (up from **4%** in November 2003). Although it appears to be a small increase when the large number of positions filled (**1376**) is Hispanic/bilingual RNs available.

Updates on ethnicity breakdowns for CNI and CNII positions will be conducted for all ethnic categories yearly (in October) and focused updates on Hispanic/bilingual nurses will also be done every six months (additional update in May).

# CCBHS Diversity Task Force
## Statement Concerning Medical Staff Representation

1.  The Cook County Bureau of Health Services (CCBHS) Diversity Task Force recognizes the importance of achieving cultural and linguistic competence to care for the CCBHS' diverse patient population, and is committed to achieving a diverse, representative staff that well serves patient populations' needs. The CCBHS is committed to hiring, retaining, and promoting under-represented medical staff.

2.  The Diversity Task Force supports and recommends the recruitment and hiring of high quality representative medical staff to care for the CCBHS' diverse patient population. The Diversity Task Force supports an open dialogue to raise collective awareness, understanding, and support for the CCBHS' commitment to diversity and equal opportunity.

3.  The Diversity Task Force believes that cultural and linguistic skills and competence are important considerations in the recruitment and hiring of medical staff.

4.  The Diversity Task Force will broadly disseminate diversity data.

5.  The Diversity Task Force will meet with the Chief Operating Officers and Medical Directors of the CCBHS Affiliates and offer their guidance and assistance toward addressing medical staff diversity issues.

6.  All CCBHS divisions will prepare a report every six months (due December 15 and June 15) to document the progress in staff representation. The report will be prepared on a spreadsheet made available by the Diversity Task Force. The report is to include the number of actual vacancies within occupational category or job title, and efforts in recruitment, retention, and promotion of underrepresented minorities. The report may also include a description of other efforts, such as policies or committees established to address medical staff diversity.

7.  The Diversity Task Force will report to Bureau Management every six months.

8.  The Diversity Task Force recommends that every CCBHS department/division discuss the importance and need to recruit/hire representative staff regularly at their department/division meetings.

9.  The Diversity Task Force encourages public posting of all employment opportunities and positions and encourages the utilization of the phrase "Cook County is an equal opportunity, affirmative action employer with a commitment to serving racially and ethnically diverse communities" on all such advertisements,

and request bilingual language skills when such skills are essential to service the patient population.

10. The CCBHS will consider applications by all qualified candidates and supports compliance with the Cook County Equal Employment Opportunity Policy, (the name of the new policy has not yet been determined. However, at this juncture, it will likely include EEO in the language) the Department of Health and Human Services guidelines on staff representation, the Cook County Human Rights Ordinance and all other state and federal statutes governing equal employment opportunities.

11. The Diversity Task Force will identify CCBHS departments/divisions with low staff representation. In conjunction with the Medical Director and Chief Operating Officer of any Bureau Affiliate identified, the Diversity Task Force will encourage the Bureau Affiliate to remove any existing barriers to the hiring of qualified individuals to address their staff representation shortcomings and offer assistance in accomplishing this goal.

12. The Diversity Task Force also recommends continued progress in increasing the level of awareness of representation issues in the residency and fellowship programs. Each program director will make an annual report to the Task Force on all developments concerning under-representation issues. Residency and fellowship programs are also encouraged to remove any existing barriers to program opportunities for qualified individuals of underrepresented groups.

13. The Diversity Task Force supports the utilization of both the J1 waiver process and the H1B visa program to increase employment opportunities for qualified physicians.

14. The Diversity Task Force will collaborate with outside agencies, schools, and organizations to develop external communication/recruitment pipelines concerning employment opportunities. The Diversity Task Force supports similar recruitment efforts by all CCBHS' Affiliates.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 440-2008-02774 |
| ☒ EEOC | |

_____ and EEOC

State or local Agency, if any

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Dr. Vietta Johnson | 773-955-5151 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5322 South Shore Drive, Chicago, Illinois 60615 | | 8-18-60 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Cook County Bureau of Health | >500 | 312-864-6820 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1900 W. Polk, Suite 220, Chicago, Illinois 60612 | | Cook |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☒ OTHER *(Specify)* EPA

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)*    LATEST *(ALL)*

April 13, 2007

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my emploment with Respondent in or about February of 1998. My position at the time of the alleged discrimination was Chair of Division of Orthopedic & Podiatric Surgery. Respondent terminated my employment on April 13, 2007, purportedly as part of a reduction in force due to budget cuts. My immediate Supervisor throughtout my employment was Clifford Crawford, M.D., Chair of the Department of General Surgery.

FEB 0 4 2008

See Attached Details

CHICAGO DISTRICT OFC

I believe that I have been harassed and discriminated against on the basis of my race and my sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| Date 2-4-08     *Charging Party (Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Day, month, and year)* February 4, 2007 |

EEOC FORM 5 (Test 10/94)

OFFICIAL SEAL
KIM CLEVELAND
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-2-2008

CHARGE OF DISCRIMINATION (CONT.)

Vietta Johnson, M.D.
The Cook County Bureau of Health/ Provident Hospital of Cook County
1900 W. Polk, Suite 220
Chicago, IL 60612
312-864-6820

Page 2

Throughout my employment, and at the time of my termination, I was the only full-time African American and the only female Orthopedic Surgeon in the Cook County Bureau of Health's Division of Orthopedic Surgery. From day one with Cook County, I was Board Certified and held a Master's in Public Health in Health Policy and Management and I was the only Foot and Ankle fellowship trained Orthopedic Surgeon at Cook County. Throughout my employment, I have worked extremely hard to provide quality services to those in the most need of it, without regard for myself and, many times, in the face of discriminatory behavior on the part of Cook County.

Under my direction, the Division grew to four Orthopedic Surgeons and three (3) Podiatrists at Provident Hospital; Provident had the largest number of Orthopedic Surgeons on the southeast side Chicago outside of the University of Chicago. My team covered the entire hospital, emergency room, consultations, operating room, and in-house patients, 365 days per year. Provident had the third (3rd) busiest emergency room in the City of Chicago.

Provident Hospital was the referral hospital for Stroger Hospital for fractures, joint replacements, disorders of the spine, feet and ankles. Provident Hospital was also the safety net for all of the south side hospitals (Michael Reese, Jackson Park, St. Bernard, Oak Forest, Trinity, South Shore and Roseland). Orthopedics led all other hospital departments (at Provident) for clinic billing and at one point billed nearly $400,000.00 in four (4) months, not even including clinic procedures. Clinic procedures totaled approximately 900 in one month.

While working for Cook County, I was: 1) President of the medical staff at Provident (2004-2006); 2) Physician of the Year; 3) one of only two orthopedic surgeons at Provident Hospital (the other orthopedic surgeon, Dan Ivankovich, M.D., was terminated for supporting me); 4) the holder of a Masters Degree in Public Health; 5) Chairman of the Infectious Control Committee; 6) Chairman of the Regulatory Committee; 7) a member of the Joint Conference Committee (this committee reviewed hospital and bureau standings regarding regulatory and clinical matters.)

During my employment at Cook County, I was harassed and discriminated against on the basis of my race and sex. Specific instances of race discrimination and harassment are as follows:

CHARGE OF DISCRIMINATION (CONT.)

Page 3

- I was paid less than my non-African American colleagues and subordinates with inferior credentials and less seniority;
- I was subjected to unfounded and unsubstantiated verbal attacks upon my competency and productivity by Clifford Crawford, M.D., (Chairman of General Surgery) which my non-African American colleagues were not subjected to;
- I was marginalized and undermined in my role as Chairman of the Division of Orthopedic and Podiatric Surgery by Clifford Crawford, M.D., while my male counterparts were not so treated; and
- I was laid off in April of 2007, without regard for my seniority and/or credentials in violation of the rules governing "reduction in force" in the Cook County Bureau of Health, whereas my non-African American colleagues were not so laid off.

Specific instances of sex discrimination and harassment are as follows:

- I was paid less than my male colleagues and subordinates with inferior credentials and less seniority;
- I was subjected to inappropriate and sexist remarks, including but not limited to being asked by the Chairman of the Department of Surgery, "Why don't you just go home and be a mother?"; and
- I was marginalized and undermined in my role as Chairman of the Division of Orthopedic and Podiatric Surgery, while my male counterparts were not so treated.

Cook County's discriminatory behavior was witnessed by physicians and staff members within the Cook County medical facilities, including but not limited to Dr. Dan Ivankovich, Dr. Carleton West and Dr. Manmohan Singh.

In April of 2007, Cook County notified me that I was being terminated due to "budget cuts". Purportedly, a lay-off plan had been prepared and approved in accordance with the "Cook County Rules and Regulations". However, this was just a "pretense", a false excuse to terminate my employment for discriminatory reasons. Cook County never produced any "lay-off plan" and the "Cook County Rules and Regulation" require that lay-offs proceed from least senior to most senior. Furthermore, it requires that laid off employees be recalled from most senior to least senior. I followed Cook County procedures and filed a grievance regarding my inappropriate lay-off. And, During that grievance, in August of 2007, Cook Count admitted that there was no specific lay-off plan and the lay-offs were supposed to be carried out strictly on a seniority basis. Furthermore, in the face of direct evidence that the layoffs were not carried out on a seniority basis, Cook County admitted that I was not laid off on the basis of seniority. However I still lost my grievance.

EEOC CHARGE OF DISCRIMINATION BY VIETTA JOHNSON, M.D.

CHARGE OF DISCRIMINATION (CONT.)

Page 4

In denying my grievance, Cook County ignored the question of seniority, ignored the evidence that I presented regarding Cook County's disregard for my seniority, ignored the evidence I presented of discriminatory actions toward me and ignored the evidence that I present proving that Cook County did not really eliminate the division, including that it kept the Podiatrist and all of the support staff.

Cook County's defenses were as follows: 1) The layoff was not bureau wide (which is patently false); 2) There is no bureau wide Department of Orthopedics (which is patently false); and 3) Cook County just happened to decide to eliminate only the Division of Orthopedic and Podiatric Surgery, where I just happen to be Chief, due to budget cuts, even though Orthopedic Surgery was the <u>most productive division in the hospital</u>.  That is incredible on its face.

In response to Cook County's specious defenses, the facts are as follows: 1) the 2007 layoff was bureau wide, however, Cook County used the layoffs to target specific individuals, including me, other female and African American physicians at Provident Hospital and Dr. Daniel Ivankovich who supported me.  The budget reduction was supposed to be 10% Bureau Wide but, by order of the "Bureau Chief", Dr. Robert R. Simon, Provident Hospital was hit with a 23% reduction (Note: Dr. Simon actually wanted a 50% reduction at Provident Hospital where the County had "isolated" almost all of the African American physicians within the County System with Stroger hospital having less than 8% African American physicians); 2) the hospitals and facilities in the Cook County system are all under the umbrella and authority of Cook County - they are not individual entities unto themselves - with all physicians in the Cook County system credentialed by one "Joint Credentialing Committee"; and 3) Cook County had no intention of actually eliminating the Division of Orthopedics at Provident Hospital when they terminated my employment.  Cook County kept the podiatrist, who could not even admit patients to the hospital on his own and could not do what orthopedic surgeons could do, and kept most if not all of the orthopedic support staff.  And, even more telling, after "laying me off", Cook County quickly transferred an orthopedic surgeon from Stroger Hospital to Provident to do orthopedics, Dr. Allen Malk, but he passed away shortly thereafter.  Cook County then started interviewing orthopedic surgeons to replace me.  And, Cook County continued to advertise in the local papers that Provident Hospital had orthopedic services.   The purported elimination of the Division of Orthopedic and Podiatric Surgery at Provident Hospital was a cruel ruse and conspiracy to get rid of me and Dan Ivankovich, for supporting me, which injured the multitude of patients who depend on the orthopedic services at Provident Hospital.

I believe that I have been harassed and discriminated against on the basis of my race and my sex in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the Equal Pay Act.

EEOC CHARGE OF DISCRIMINATION BY VIETTA JOHNSON, M.D.

6    125th Anniversary Section, August 15, 2007



# Barnes & Noble in Hyde Park? (yes, it's true!)

Enjoy all the benefits of your Barnes & Noble membership without the trip Downtown!

Member benefits include:

**40% off List**    Hardcover Bestsellers

**20% off List**    Adult Hardcovers* including cookbooks, art books, fiction, non-fiction and much more

**10% off**    already discounted items, bargin books, childrens books, paperbacks, Starbucks Cafe, University of Chicago apparel & gifts, school supplies, greeting cards and more.

*excludes medical & professional reference & course materials other exclusions may apply.

We're located at Ellis & 58th, in the heart of the beautiful University of Chicago campus.

**BRING IN THIS AD FOR A FREE TALL COFFEE/TEA IN OUR STARBUCKS CAFE!**
offer valid through 09/01/07

proudly brewing



STARBUCKS COFFEE

# THE UNIVERSITY OF CHICAGO BOOKSTORE

970 e. 58th / 773.702.7712 / uchicago.bkstore.com / open m-f 8-6  sat 9-4

---

## Alive and Well

Cook County
Illinois 60615

### Celebrating 14 Years of Community Excellence



### Services

Asthma Clinic
Cardiology
Critical Care
Dermatology
Diabetic Clinic
Emergency Medicine
HIV Primary Care
Infectious Disease
Internal Medicine
Neurology
Obstetrics/Gynecology
Orthopedics
Pathology
Pediatrics
Physical Therapy
Podiatry
Radiology
Same Day Surgery
Speech Therapy
Surgery
Urology

Provident Hospital
of Cook County

Case 1:08-cv-02139    Document 1    Filed 04/15/2008    Page 59 of 80

# "We are working to fix Cook County

## -Stroger

*Criticism have trailed the ascension of Todd Stroger as Cook County Bard President following a devastating stroke that knocked off his from the ballot last year. Many critics are already predicting a one term for*

*the amiable Stroger. Stroger however, debunked all the criticism in an interview with the team of The Chicago Inquirer comprising Joseph Omoremi and Jimo Kasali. Excerpts:*



Cook County nard President Todd Stroger

**Inquirer:** How has it been since you became the Cuunty Board President?

**Stroger:** It's been challenging, it's been a hard thing to overcome a $500 million hole in a budget. Even though we passed the budget and we are working with a balanced budget, it put some strain on the county. That is just because we don't have the same resources we used to have.

**Inquirer:** Why is everybody mad at you?

**Stroger:** I can't tell you. I don't know what anyone will do differently if they had to take half a billion dollar out of a budget. I don't think my detractors have come up with anything that they will do differently. They are complaining but they have not come up with a plan that will be any better than what we've done.

**Inquirer:** Has all those criticism changed your vision?

**Stroger:** No, my goal has always been to make sure the county run smoothly, effectively and be able to do things for people who couldn't do them for themselves. The county itself has so many different operations and so many different elected officials. We want to make sure that we do fund their office and we want to make sure that the services that we give for people in areas like health care are still there.

So far we've been able to do a good job. It is something that could not be done alone. We are reaching out to state, federal government and we are reaching out to county commissioners to make sure we are all moving in the same direction. This is no showboating, if we don't move in

the same direction with the county board members, the county is going to fail in some shape or form that will be detrimental to citizens. I think we have good relationship with the commissioners, we communicate with Daley and we are trying to make sure that we provide services.

**Inquirer:** Who do you blame for $500 million hole in the budget bearing in mind that your father was in charge for several years?

**Stroger:** I think that there are lot of things that went wrong in the last seven years or so in management. People were not doing what they were supposed to be doing and people who were above were not scrutinizing enough to know that things were not been done the way it should have been done.

will be okay That is just campaign slogan.

In reality, we get rid of 2000 people and we are still going to have a hard time next year with the budget because the cost of everything is going up. Just like in every ones home, like gas, electricity etc, it goes up for the county too.

That doesn't even include the cost of employees where they get pay rises, cost of living increase and health. It comes to a point where taxmatic has to bring in money. We've reached that point.

**Inquirer:** Newspaper reports said you are open to increase in property taxes. Is that the way out?

**Stroger:** No, property taxes may not be the solution. If we raise property taxes, we make like $25 millions which will be a drop in the budget

**Inquirer:** What are the options?

**Stroger:** That is what we are going to figure out during our budget negotiations. It is too early to decide how we are going to do it now. We are really still trying to make sure that the numbers that we put in budget that we passed in February are real because during that process we found there is a lot of amendments that were done the last moments weren't fact full. The numbers didn't meant. We have to go back and make it right so that we are not spending money we don't have.

**Inquirer:** There is a new generation of African-American political leaders emerging. Yourself, Senator Barack Obama, Congressman Jackson and others. What does that signify to the Black race?

## What we havent got is much pos itive feeling from North Side Congressmen. Both of them are adamant that there are some bad things going on in the county and they dont want to help get federal funding to fix it. —Todd Stroger

We've come to the point that it caused some damage. But on top of that, we also have some commissioners who haven't come to the realization that we can run an operation without money. There is a group which has always been saying just fire all the patient workers and we

for probably $200 million deficit in our next budget. We need revenue source but property tax doesn't raise enough money. Even though it strikes too many people but it doesn't raise enough money)

**Inquirer:** There wouldn't be prop-

erty tax raises?

**Stroger:** I don't think so. I can't speak for a whole board, but I don't think the public wants to fund the things we do with property taxes. They want to see something different.

> The biggest challenge  for me is the perception of few newspapers who are trying to make it seems that there are really bad things going on in the county. And that there is nothing good going on in the county. It is bad on our workers. They dont  get any respect in the media and that is sad —**Todd Stroger**

**Stroger:** It is a good thing for us. This is a time when people who are in their 30s and 40s are moving into roles traditionally. African Americans didn't move into until they are in their 60s. Before, you don't have the opportunity until you've been around forever and this gives the opportunity to turn younger and help more people and if we want we can  move out to do something else.

**Inquirer:** Some years back, Retired Appellate Court judge Eugene Pincham predicted that African Americans could have both the Mayor and County board president if they work for it. In the last election, it is believed that your election compromised the target. What do you think?

**Stroger:** Right now, the mayor is effective. People look at the city and they like it. I was at the Chase building in the 57 floor and talking with a young African American investment banker and we look at the window and we realize that this is a nice live after life. It's clean and there are so many things to do and the neighborhoods are taken care. That is why we can't elect a new mayor now.

**Inquirer:** But the two positions is becoming a dynasty bearing in mind that you succeeded your father like Mayor Daley and one of the mayor's son is in the army probably waiting in the wings?

**Stroger:** The young Daley is in the army. He is not coming back soon. In government, you find that people by nature are conservative and are looking for somebody they respect than somebody they don't know. That is why it is easy for people with name recognition. their spottest  for children get elected. They have certain amount of respect for the person. There is a old saying that the apple doesn't fall far from the tree.

**Inquirer:** How are you cooping with the Chicago machine?

**Stroger:** Everybody has a machine. Each side has that. It's all about organization, getting your information out, touching people and things like that

**Inquirer:** You are not being manipulated?

**Stroger:** No. I don't get calls from political people except the ones that directly affects us like the president of the senate, the speaker of the

house and when our legislatures go to the state and things like that. Also, may be trying to know what is going on and ready to help, but no one is pulling my strings as they say.

**Inquirer:** What has been the biggest challenge?

**Stroger:** The good thing about the job of this nature is that you can't get home without enable hands. I think we've hired a lot of good people who are knowledgeable and want to see the county succeed. The biggest challenge for me is the perception of few newspapers who are trying to make it seems that there are really had things going on the county. And that there is nothing good going on in the county. It is bad on our workers. They don't get any respect in the media and that is sad

Trying to get through the media and going them to do movies about our cancer center which we just opened and one of the largest in the country. These are lot of good things happening in the county and getting the media to write about it.

**Inquirer:** Why the criticism if the people hired are competent qualified and knowledgeable?

**Stroger:** The people that I have hired have a lot of experience in their positions and most of them have masters in finance and business administration.

Unfortunately, the media criticism are not only off the mark and inaccurate but sometimes they put wrong  salaries in and they tried to put people up and make the president looks real bad.

What about the Cancer center: It's in the Stroger hospital. Actually the hospital has the highest mortality rate per cancer victims in the nation. They have some navigators trying to help you through the process. The county is proud to be part of it.

**Inquirer:** When will the county begin to charge fee?

**Stroger:** We do now. We do everything that other hospitals do. They have a pay schedule. If you are earning much money, you pay more and if you are not  making much money, you don't pay

**Inquirer:** Why did you get rid of so many clinics?

**Stroger:** We got rid of 13 clinics but 93 percent of the people have moved up to other clinics. We lost seven percent. The clinics are still moving

and we will make it more services. We will extend the hours. There is no gloom and doom. We recognize the county hospitals and we will run it that way.

**Inquirer:** If that is the case, why are the doctors and nurses after you with posters and billboards criticizing your administration?

**Stroger:** We get that because we had to lay off some of nurses and doctors. We let go some orthopedic. She may have been doing five surgeries a year. We got rid of something and move them to the Stroger hospitals and contacted other hospital that could handle the rest

**Inquirer:** What message do you have for the community?

**Stroger:** The County itself is working for the citizens and even the real press, we are still working hard. It is still going to be rock and roll to get many things fixed because the numbers is so big, there is no way we could easily fix it in one budget or one month.

**Inquirer:** How are federal legislators helping the county?

**Stroger:** Both Congressman Danny Davis and Bobby Rush have been very positive. Congressman Davis took a tour of the hospital and said money is what the county needed to make things better. What we haven't got is much positive feeling from North Side Congressman. Both of them are adamant that there are some bad things going on in the county and they don't want to help get federal funding to fix it. Our position is that we are working in fixing the county. We are not in agreement with them that things are in bad shape, that money should be withheld. If you give up the money, we will be able to fix the  problems



**Inquirer:** What about the two senators?

**Stroger:** Senator Durbin is a hot spot and needs to listen to the whole delegation. I think at this point that is why we have our Blue Ribbon

Commission to look at the issue and make suggestions and give a report  if we are on the right track That may help alleviate the problems we had with the North-side Congressmen.

> The  County itself is working for the citizens despite the criticism. We are still working hard. It is still going to be rock and roll to get many things fixed because the numbers is so big, there is no way we could easily fix it in one budget or one month.

(Note: Stroger states "She may have been doing five surgeries a year. This was in response to a general question Re's doctors and nurses. He brought up Ortho pedics. Dr. Johnson is the only female in the Division.)

**TODD H. STROGER**

PRESIDENT

| | | | | | |
|---|---|---|---|---|---|
| EARLEAN COLLINS | 1st Dist. | PETER N. SILVESTRI | 9th Dist. |
| ROBERT STEELE | 2nd Dist. | MIKE QUIGLEY | 10th Dist. |
| JERRY BUTLER | 3rd Dist. | JOHN P. DALEY | 11th Dist. |
| WILLIAM M. BEAVERS | 4th Dist. | FORREST CLAYPOOL | 12th Dist. |
| DEBORAH SIMS | 5th Dist. | LARRY SUFFREDIN | 13th Dist. |
| JOAN PATRICIA MURPHY | 6th Dist. | GREGG GOSLIN | 14th Dist. |
| JOSEPH MARIO MORENO | 7th Dist. | TIMOTHY O. SCHNEIDER | 15th Dist. |
| ROBERTO MALDONADO | 8th Dist. | ANTHONY J. PERAICA | 16th Dist. |
| | | ELIZABETH ANN DOODY GORMAN | 17th Dist. |



**BUREAU OF HUMAN RESOURCES**
OF COOK COUNTY

**KIM DAVID GILMORE**
CHIEF OF HUMAN RESOURCES

County Building
118 North Clark Street
Chicago, Illinois 60602-1304
(312) 603-3300 TEL
(312) 603-5404 FAX
(312) 603-5255 TDD

April 10, 2007

VIETTA L JOHNSON
5201 S CORNELL AVE, APT. #26E
CHICAGO, IL 60615

Re:    Layoff due to Budget Cuts

Dear VIETTA L JOHNSON:

Cook County Government has experienced significant budgetary constraints, which has required staff reductions. To accomplish this, a layoff plan has been prepared and approved in accordance with the Cook County Rules and Regulations and any applicable collective bargaining agreement. We regret to inform you that your position is among those affected. Effective at the close of business on April 13, 2007 you will be laid off.

Included with this letter, is a summary of services from the Illinois Department of Employment Security, summary of employee benefits termination provisions, an Employee Assistance Program (EAP) brochure detailing services that are provided and the Cook County President's Office of Employment Training material. Your final pay check will include unused vacation time.

Please accept my gratitude on behalf of the County for your valued service.

Sincerely,

Kim David Gilmore
Bureau Chief

cc:    Personnel File

THE BOARD OF COMMISSIONERS
· TODD H. STROGER
PRESIDENT

| | | | |
|---|---|---|---|
| EARLEAN COLLINS | 1st Dist. | PETER N. SILVESTRI | 9th Dist. |
| ROBERT STEELE | 2nd Dist. | MIKE QUIGLEY | 10th Dist. |
| JERRY BUTLER | 3rd Dist. | JOHN P. DALEY | 11th Dist. |
| WILLIAM M. BEAVERS | 4th Dist. | FORREST CLAYPOOL | 12th Dist. |
| DEBORAH SIMS | 5th Dist. | LARRY SUFFREDIN | 13th Dist. |
| JOAN PATRICIA MURPHY | 6th Dist. | GREGG GOSLIN | 14th Dist. |
| JOSEPH MARIO MORENO | 7th Dist. | TIMOTHY O. SCHNEIDER | 15th Dist. |
| ROBERTO MALDONADO | 8th Dist. | ANTHONY J. PERAICA | 16th Dist. |
| | | ELIZABETH ANN DOODY GORMAN | 17th Dist. |

BUREAU OF HUMAN RESOURCES
OF COOK COUNTY

KIM DAVID GILMORE
CHIEF OF HUMAN RESOURCES

County Building
118 North Clark Street
Chicago, Illinois 60602-1304
(312) 603-3300 TEL
(312) 603-5404 FAX
(312) 603-5255 TDD



October 2, 2007

Dr. Vietta Johnson
5322 S. Shore Drive
Chicago, IL 60615

**RE:    LAYOFF HEARING for DR. VIETTA JOHNSON**
**Represented by ATTORNEY LINDA CHATMAN**
**PROVIDENT HOSPITAL**
**DATE OF HEARING – AUGUST 17, 2007**
**CASE # HR07-07-05**

<u>In Attendance</u>:

|  |  |
|---|---|
| Grievant: | Dr. Vietta Johnson, Chair, Orthopedic Division-Provident |
| Attorney: | Ms. Linda Chatman |
| | |
| Management: | Dr. Aaron Hamb, Chief Medical Officer-Provident |
| | Dr. Mark Gonzalez, Chief of Orthopedics-Stroger |
| | Dr. Clifford Crawford, Chair, Dept. of Surgery-Provident |
| | Dr. Richard Keen, Associate Chair, Surgery-Stroger |

<u>Issue</u>:

Dr. Johnson received a layoff notice in April 2007 stating that her position, Chair of the Division of Orthopedic and Podiatric Surgery at Provident Hospital, had been eliminated due to budgetary constraints causing management to eliminate her entire division. She is grieving her belief that the layoff is a result of gender and racial discrimination.

<u>Management's Position</u>:

Dr. Hamb, Chief Medical Officer at Provident Hospital, presented for management. He stated that the hospital was mandated by the Cook County Board to achieve certain reductions in spending. Dr. Hamb emphasized that he reviewed reduction options for Provident Hospital only and that he did not have the authority or instruction to consider reductions on a bureau-wide basis.

 Printed on Recycled Paper

Page 2

Management's Position (con't.):

Dr. Hamb asserted that the Orthopedic Department to which Dr. Johnson belonged was eliminated completely based on a lower amount of activity and productivity than other departments at Provident Hospital. He stated there were other departments that were also eliminated in full.

Dr. Hamb said that there were many staff meetings and consultations regarding the budget cuts but that the final decisions were made by Mr. Fairman (the then Chief Operating Officer of Provident Hospital), Dr. Simon (the Chief of the Bureau of Health) and himself during January and/or February of 2007. He stressed that gender and/or race were never discussed nor factors in the decision to eliminate the Orthopedic Division.

Grievant's Position:

Ms. Chatman maintained that Dr. Johnson and the Orthopedic Division she chaired were unfairly targeted for elimination due to her public comments made against the policies of Health Bureau Chief, Dr. Simon, and his proposed cuts at Provident Hospital. She said that Dr. Johnson was also singled out because she was one of a few doctors who were actively seeking to unionize doctors at Provident Hospital.
Ms. Chatman stated that she was aware of a doctor from Stroger Hospital who transferred to Provident in June after the layoff occurred. She also said that she knew some part-time doctors were still at Provident providing some of the services previously done by Dr. Johnson and the Orthopedic Division.
Collectively, Ms. Chatman charged that management had effectively made a bureau-wide decision to lay off troublesome doctors at Provident Hospital at the expense of the community being served and the diversity of doctors employed by Cook County.
Dr. Johnson pointed out that her full-time salary is less than the industry standard in her field of expertise as well as low compared to most other County doctors. She believes this to be a clear example of discrimination based on her race and sex.
The Grievant and her attorney provided documentation that alleged a number of incidents with management since 2003 that, in their view, demonstrated discrimination.
On August 21, 2003, Dr. Johnson walked into a meeting between one of her staff, Dr. Ivankovich, and the Chair of the Department of Surgery, Dr. Cliff Crawford. In the course of their discussion, Dr. Johnson alleged that Dr. Crawford told her to, "go home and be a mother." Feeling that she was being discriminated against for her gender, Dr. Johnson brought the remarks to the attention of Dr. Crawford's supervisor, Dr. Hamb, the Chief Medical Officer at Provident Hospital. He told her that he would speak to him.
In 2004, Dr. Johnson requested a meeting with Drs. Crawford and Hamb to address rumors that Dr. Crawford was questioning Dr. Johnson's scheduling and canceling of time in the Operating Room. At that meeting, Dr. Crawford did not produce any documentation to support the allegation.

Page 3

Grievant's Position (cont.):

In 2005, a number of incidents, comments and questions from Dr. Crawford led Dr.
Johnson to write a memo to management requesting that Dr. Crawford cease harassing
her and showing disrespect to her division. Dr. Johnson asked that her division be given
department level status and no longer report to Dr. Crawford.
In 2006, Dr. Crawford sent Dr. Johnson a letter questioning her leadership and Dr.
Johnson maintains that his poor treatment continued until the time of her layoff. As one
of the only African-American females on the medical staff at Provident Hospital who was
harassed and underpaid by management, Dr. Johnson believes her layoff was based on
discrimination based on her race and sex.
Ms. Chatman stated that these personal interactions can not be taken out of the equation
when management decided to eliminate the Pediatric Division that Dr. Johnson chaired.
There was a history of discrimination and the layoff of Dr. Johnson is unjust. There are
less senior, less qualified and part-time staff still working at Provident.
They are seeking re-instatement with full back pay and benefits.

Findings:

While Dr. Johnson and Ms. Chatman alleged a number of incidents of friction between
the Grievant and Management (specifically Dr. Crawford), the decision to eliminate the
Orthopedic Division and Dr. Johnson's position was made by Dr. Hamb, Dr. Simon and
Mr. Fairman. There is no evidence that they discriminated against the Grievant on this
decision or at any time in the past. It is also noted that Dr. Johnson never filed a formal
grievance against Management until her position and department were eliminated.

Decision:

The appeal is denied. Management had the authority to eliminate the division in which
Dr. Johnson worked. There is no proof of any improper action taken by them.
Incorporated by reference in this decision are all records and documents submitted and
accepted at the hearing and retained in the employee/employer personnel file.

Timothy W. Egan
Hearing Officer

CC: Ms. Linda Chatman
     Dr. Aaron Hamb

**CCBHS
Diversity Task Force**

Presentation to Bureau Management
06/17/2004

---

1. **Background of CCBHS
   Diversity Task Force**

   a) Effort of many in Bureau
   b) Bureau leadership support
   c) Members represent Bureau

---

**Diversity/Cultural Competence Efforts:**

1. Kaiser Permanente
2. Denver Public Health System
3. All other public health systems

---

**Overview of Talk:**

1. CCBHS/Cook County demographics
2. Uninsured data
3. Health Disparities
4. Race Concordant Patient Care
5. CCBHS/Physician/Nursing/Clerical Data
6. CCBHS Diversity Task Force Statement/Recommendations

---

2. **CCBHS patient population**

   a) About 65% African-American
   b) About 25% Hispanic
      - About 80% Mexican
      - About 18% Central Americans and Puerto Ricans
      - About 2% others
   c) About 10% other

---

3. **Cook County Demographics** (2000 census)

   a) 5.4 million people, 2nd largest in US
   b) 1.4 million African-American (26%) -largest in US county
   c) 1.1 million Hispanic (20%) -4th largest in US

      -Chicago 2nd largest in US

1

4.   Health Care Needs of CCBHS patients

   a)   Uninsured / Underinsured



5.   Health Disparities

Question: If there are more White uninsured patients in Cook County (than AA or Hispanic), why do they only represent about 5% of the CCBHS patient population?



- **Potentially curable lung cancer**
  (Bach P, et al. NEJM.1999;341:1198-1205)

  - 77% of White patients get surgery

  - 64% of Black patient get surgery

2

**Eye exam for diabetics with Medicare**
(Blustein J. et al. J Health Care Poor & Underserved 1998;9:153-169)

- 46% of Whites

- 35% of Blacks

**Adequate cancer pain treatment**
(Cleveland C, et al. Annals of Int Med 1997;127:813-816)

- 50 of Whites

- 41% of Blacks

- 28% of Hispanics

**Renal transplantation**
(Epstein A. et al. NEJM 2000;343:1537-1544)

- 52% of Whites

- 17% of Blacks

**Medicare treatment differences**
(Lee A. et al, Medical Care 1997;35:1173-1189)

- CABG 2.9 times more likely in Whites than Blacks

- Angioplasty 2.8 times...

- Arthroscopy 2.0 times...

- Cataract 1.33 times...

**Adequate immunizations**
(Ronsaville D, et al. Am J Public Health 2000;90:1496-1443)

- 64% if White infants

- 42% of African-Americans

- 49% of Hispanics

**Treatment of depressed patients**
(Sirey J, et al. Am J Psychiatry 1999;156:690-696)

- 84% of White patients

- 30 of Black

- 56 of Hispanic

3

6. **Studies on Concordance of Patient and Physician Race:**

---

- Cooper LA, et al. Ann Intern Med. 2003 Dec. 2;139 (11):907-15

  - African-American patients spend more time with AA providers (2.15 min.)

  - AA patients rate race concordant visits more positively

  - Effect not explained by communication content

  - Possibly an attitude issue between provider / patient

---

- Cooper-Patrick L, et al. JAMA 1999 Aug 11:282(6):583-9

  - AA patients seeing AA providers rate their physicians' decision-making styles as more participatory, compared to those seeing White physicians.

---

- La Veist TA, et al. J Health Soc Behav. 2002 Sep;43(3):296-306

  - National sample of AA, White, Hispanic, and Asian American respondents.

  - All groups rated race-concordant care with greater satisfaction than race-discordant care.

---

- La Veist TA, et al. J Natl Med Assoc. 2002 Nov;94(11):937-43

  - AA patients with higher income and with a choice were more likely to have AA physicians.

  - AA patients receiving race-concordant care reported a higher level of satisfaction.

---

- Murray-Garcia JL, et al. Acad Med 2001 Dec;76(12):1232-40.

  - AA, Asian, and Latino residents see disproportionate numbers of patients from their own racial or ethnic backgrounds.

  - Not completely explained by language proficiencies.

  - Race and ethnicity may be highly valued by patients

4

- Komaromy M, et al. N Engl J Med 1996;334:1305-10.

  - AA and Hispanic physicians see 2-5 times more patients of their own race/ethnicity than other physicians.

- Morales LS, et al. J Gen Intern Med 1999;14:409-417.

  - Spanish speaking patients are not satisfied with the provider communication they encounter.

- Bottom Line:

  - Patients value care highly from providers who look like them, talk like them, have similar backgrounds and culture.

7. **CCBHS Physician Data:**

  - 40.8% of physicians are White (national about 80%)

  - Asians 23.9%.

  - African-Americans 15% (due to Provident and ACHN).

  - Hispanics 4.2% (Mexicans 1.3%)

- **Stroger Hospital** (60% of physicians)

  - 50% White

  - 7.9 % AA

  - 4.7 % Hispanic

- **Provident and ACHN**

  - About 40% AA or Hispanic

**Oak Forest Hospital**

- 63% Middle Eastern or Asian

- 21% White

---

**Observations:**

---

- Provident and ACHN have higher minority physician representation.
- Effect multi-factorial, but in large part due to the medical and administrative leadership (minorities more likely to recruit and hire minorities).
- Recruiting and hiring of AA and Hispanic physicians doable, but still a big task:
  - Minority leadership more connected to this group.
  - Number of AA and Hispanic physicians decreasing nationally since 1990:
  - State schools in CA, TX, others cut minority med school #'s drastically.
  - More foreign graduates joining our medical system
- The CCBHS needs to do better ("We need to do better," per Mrs. Rothstein).

---

8.  **Nursing / clerical CCBHS data**

---

**ETHNIC BREAKDOWN
NURSING STAFF ONLY (CNI/CNII)**

Six months ago, in November of 2003, we collected data on the ethnic breakdown of nurses in CNI and CNII sessions throughout the Bureau.

**November 2003**

| Affiliate | White | Black | Hispanic | Asian |
|---|---|---|---|---|
| Stroger | 23 | 112 | 13 | 209 |
| ACHN | 4 | 53 | 11 | 63 |
| Provident | 21 | 23 | 13 | 71 |
| Oak Forest | 23 | 60 | 4 | 71 |
| Cermak | 17 | 56 | 7 | 23 |
| CORE | 2 | 31 | 1 | 4 |
| CCRS | 0 | 1 | 1 | 1 |
| Total for all Affiliates | 171/8% | 334/14% | 48/4% | 513/43% |

The following is an update on these statistics, focused on Hispanic/bilingual nurses only.

| Affiliate | Nov. 2003 | Dec. 2003 | Bilingual (Spanish) |
|---|---|---|---|
| Stroger | 13 | 22 | 3% |
| ACHN | 11 | 14 | 27% |
| Provident, Oak Forest | 13 | 13 | 27% |
| Cermak | 7 | 2 | 9% |
| CORE | 1 | 1 | 3% |
| CCRS | 1 | 1 | 9% |
| Total for all Affiliates | 46 | 63 | 9% |

---

9.  **CCBHS Diversity Task Force Statement Concerning Medical Staff Representation**

# 3. Cultural and linguistic skills  and competence are important considerations in the recruitment and hiring of medical staff.
# 5 and # 11 Communication with CCBHS COOs and Medical Directors, department and division heads.
# 6. CCBHS Affiliates to prepare a report every six months (due Dec. 15 and June 15)
# 7. Report to Bureau Management every six months.
# 8. Recruitment and hiring, posting of positions.  Task force needs to develop resource list for medical departments
# 12. Residency and fellowship programs. Also increase AA / Hispanic representation, train our providers of the future.

6

# ETHNIC BREAKDOWN
## NURSING STAFF ONLY (CNI/CNII)

Public Health has three (3) additional Hispanic/bilingual candidates that have been selected for hire and are to begin in June, 2004. By June, the percentage (%) of increase will then be 47% for Public Health.

Currently the three affiliates that demonstrate an increase in the hiring of Hispanic/bilingual nurses are: John H. Stroger Hospital, Ambulatory and Community Health Network (ACHN), and Public Health.

Hispanic nurses in the CNI/CNII category make up **5%** of the total filled positions for this category (up from **4%** in November 2003). Although it appears to be a small increase when the large number of positions filled (**1376**) is Hispanic/bilingual RNs available.

Updates on ethnicity breakdowns for CNI and CNII positions will be conducted for all ethnic categories yearly (in October) and focused updates on Hispanic/bilingual nurses will also be done every six months (additional update in May).

## CCBHS Diversity Task Force
## Statement Concerning Medical Staff Representation

1.  The Cook County Bureau of Health Services (CCBHS) Diversity Task Force recognizes the importance of achieving cultural and linguistic competence to care for the CCBHS' diverse patient population, and is committed to achieving a diverse, representative staff that well serves patient populations' needs. The CCBHS is committed to hiring, retaining, and promoting under-represented medical staff.

2.  The Diversity Task Force supports and recommends the recruitment and hiring of high quality representative medical staff to care for the CCBHS' diverse patient population. The Diversity Task Force supports an open dialogue to raise collective awareness, understanding, and support for the CCBHS' commitment to diversity and equal opportunity.

3.  The Diversity Task Force believes that cultural and linguistic skills and competence are important considerations in the recruitment and hiring of medical staff.

4.  The Diversity Task Force will broadly disseminate diversity data.

5.  The Diversity Task Force will meet with the Chief Operating Officers and Medical Directors of the CCBHS Affiliates and offer their guidance and assistance toward addressing medical staff diversity issues.

6.  All CCBHS divisions will prepare a report every six months (due December 15 and June 15) to document the progress in staff representation. The report will be prepared on a spreadsheet made available by the Diversity Task Force. The report is to include the number of actual vacancies within occupational category or job title, and efforts in recruitment, retention, and promotion of underrepresented minorities. The report may also include a description of other efforts, such as policies or committees established to address medical staff diversity.

7.  The Diversity Task Force will report to Bureau Management every six months.

8.  The Diversity Task Force recommends that every CCBHS department/division discuss the importance and need to recruit/hire representative staff regularly at their department/division meetings.

9.  The Diversity Task Force encourages public posting of all employment opportunities and positions and encourages the utilization of the phrase "Cook County is an equal opportunity, affirmative action employer with a commitment to serving racially and ethnically diverse communities" on all such advertisements,

and request bilingual language skills when such skills are essential to service the patient population.

10. The CCBHS will consider applications by all qualified candidates and supports compliance with the Cook County Equal Employment Opportunity Policy, (the name of the new policy has not yet been determined. However, at this juncture, it will likely include EEO in the language) the Department of Health and Human Services guidelines on staff representation, the Cook County Human Rights Ordinance and all other state and federal statutes governing equal employment opportunities.

11. The Diversity Task Force will identify CCBHS departments/divisions with low staff representation. In conjunction with the Medical Director and Chief Operating Officer of any Bureau Affiliate identified, the Diversity Task Force will encourage the Bureau Affiliate to remove any existing barriers to the hiring of qualified individuals to address their staff representation shortcomings and offer assistance in accomplishing this goal.

12. The Diversity Task Force also recommends continued progress in increasing the level of awareness of representation issues in the residency and fellowship programs. Each program director will make an annual report to the Task Force on all developments concerning under-representation issues. Residency and fellowship programs are also encouraged to remove any existing barriers to program opportunities for qualified individuals of underrepresented groups.

13. The Diversity Task Force supports the utilization of both the J1 waiver process and the H1B visa program to increase employment opportunities for qualified physicians.

14. The Diversity Task Force will collaborate with outside agencies, schools, and organizations to develop external communication/recruitment pipelines concerning employment opportunities. The Diversity Task Force supports similar recruitment efforts by all CCBHS' Affiliates.



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5072 8748

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

April 10, 2008

Dr. Daniel Ivankovich
c/o Linda C. Chatman, Esquire
Law Offices of Marcus, Boxerman, et al.
Attorney at Law
19 South LaSalle St., Ste.1500
Chicago, IL  60603

Re:  EEOC Charge Against Cook County Bureau of Health
     No. 440200802793

Dear Dr. Ivankovich:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it
will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the
charge and the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because you through
your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. 2000e, et seq., against the above-named respondent.

     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                         Sincerely,

                     Grace Chung Becker
               Acting Assistant Attorney General
                    Civil Rights Division

            by   *Karen L. Ferguson*
                    Karen L. Ferguson
               Supervisory Civil Rights Analyst
               Employment Litigation Section

cc:  Chicago District Office, EEOC
     Cook County Bureau of Health

EXHIBIT
B



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5072 8762

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

April 10, 2008

Dr. Vietta Johnson
c/o Linda C. Chatman, Esquire
Law Offices of Marcus, Boxerman, et al.
Attorney at Law
19 S. LaSalle St., Ste. 1500
Chicago, IL  60603

Re:  EEOC Charge Against Cook County Bureau of Health
     No. 440200802774

Dear Dr. Johnson:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it
will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the
charge and the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because you through
your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. 2000e, et seq., against the above-named respondent.

     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

     This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                              Sincerely,

                         Grace Chung Becker
                  Acting Assistant Attorney General
                        Civil Rights Division

             by        *Karen L. Ferguson*
                         Karen L. Ferguson
                  Supervisory Civil Rights Analyst
                  Employment Litigation Section

cc:  Chicago District Office, EEOC
     Cook County Bureau of Health



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5072 8755

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Dr. Karen Nash                                          April 10, 2008
c/o Linda C. Chatman, Esquire
Law Offices of Marcus, Boxerman, et al.
Attorney at Law
19 South LaSalle St., Ste.1500
Chicago, IL  60603

Re:   EEOC Charge Against Cook County Bureau of Health
      No. 440200802794

Dear Dr. Nash:

      Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it
will not be able to investigate and conciliate that charge within
180 days of the date the Commission assumed jurisdiction over the
charge and the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because you through
your attorney have specifically requested this Notice, you are
hereby notified that you have the right to institute a civil action
under Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. 2000e, et seq., against the above-named respondent.

      If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

      This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                              Sincerely,

                         Grace Chung Becker
                    Acting Assistant Attorney General
                         Civil Rights Division

                    by    *Karen L. Ferguson*

                         Karen L. Ferguson
                    Supervisory Civil Rights Analyst
                    Employment Litigation Section

cc:  Chicago District Office, EEOC
     Cook County Bureau of Health



## COOK COUNTY BUREAU OF HEALTH SERVICES
# ONE OF THE LARGEST PUBLIC HEALTH
## SYSTEMS IN THE COUNTRY

In 1835, four years after Cook County Government was incorporated, the first health service, the Public Alms House for the poor, was established. In 1991, the Cook County Board created the Cook County Bureau of Health Services (CCBHS), an innovative, cost-efficient system of integrated healthcare. Today, it is the second largest division of Cook County Government and one of the largest public health systems in the country.

Serving a population of more than five million people spread over a sprawling area poses logistical challenges to ensuring access to all those in need of services. As part of its strategic plan, the Bureau focuses on the dual strategy of bringing health care into vulnerable communities by opening a network of neighborhood health centers throughout the city and suburbs while simultaneously building a new Hospital to serve as the hub of the system's inpatient services.

The Bureau's seven affiliates include the Ambulatory and Community Health Network of Cook County, Cermak Health Services of Cook County, Cook County Department of Public Health, The Ruth M. Rothstein CORE Center, John H. Stroger, Jr. Hospital of Cook County, Oak Forest Hospital of Cook County, and Provident Hospital of Cook County. The scope of healthcare services provided ranges from preventive and primary care, prenatal care, communicable diseases, and environmental health to long-term care, rehabilitation and geriatric medicine. The Bureau is a leader in innovative health programs that target those diseases and conditions that disproportionately impact the populations that it serves asthma, diabetes, HIV AIDS, trauma, cancer, high risk pregnant women and babies.

The Bureau now operates 30 community health centers. They are located in community, school and hospital based settings in underserved areas of Chicago and suburban Cook County. The Bureau has decentralized specialty services throughout the system so that it is easier for patients to receive care, stay healthy and not wait to seek care until they are so ill that they need to come into a hospital.

Therefore the Bureau recognizes its obligation not only to create a more effective internal system, but also to facilitate the development of a more integrated healthcare network throughout Cook County.

The Bureau has developed collaborations with other healthcare providers with the goal of expanding services at the neighborhood level while eliminating costly duplication. These partnerships have increased primary care capacity for indigent patients, established community delivery sites for low-risk mothers, and expanded the access of specialty care services offered by the Bureau to community providers.

Current hospital partnerships include Bethany Hospital, Jackson Park Hospital, Northwest Community Hospital, Rush Presbyterian-St. Luke's Medical Center, Saint Anthony Hospital, Saint Elizabeth Hospital, Saint James Hospital and Thorek Hospital. The Bureau has also established working relationships with such public sector partners as the Chicago Department of Public Health, federally funded community health centers and the Veteran's Administration. All of these relationships have allowed the Bureau to more successfully meet its mission.



EXHIBIT

C

# MARCUS, BOXERMAN & CHATMAN, LLP

A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

19 SOUTH LASALLE STREET
SUITE 1500
CHICAGO, ILLINOIS 60603

IRA J. MARCUS
MICHAEL J. BOXERMAN*
LINDA C. CHATMAN
SEAMUS M. RYAN

TELEPHONE  (312) 641-2233
FACSIMILE  (312) 332-4629

*Also Admitted in Missouri

OF COUNSEL
LEE SCOTT PERRES
JOHN J. DWYER, JR.
ROGER V. MCCAFFREY-BOSS

Via Hand Delivery
February 4, 2008

Mr. Todd Stroger
President, Cook County Board of Review
118 N. Clark St Room 537
Chicago, IL 60602

Re:  Vietta Johnson, M.D., Dan Ivankovich, M.D. and Karen Nash, M.D.

Dear President Stroger:

Vietta Johnson, M.D., Dan Ivankovich, M.D. and Karen Nash, M.D., have retained this firm to prosecute their claims against the Cook County Bureau of Health (hereinafter "Cook County")  and certain individuals within the Bureau.  Cook County wrongly terminated Drs. Johnson, Ivankovich and Nash's employment in April of 2007 in violation of federal law, Cook County rules, and in violation of public policy.  Specifically, Cook County discriminated against Drs. Johnson and Nash in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act.   Cook County discriminated against Dr. Ivankovich in violation of the Civil Rights Act of 1964, as amended, and the Equal Pay Act in response to his support of Dr. Johnson.  I have attached copies of the Charges of Discrimination that were filed against Cook County and, therefore, I will not go into detail regarding the discrimination claims in this letter. But, suffice it to say, Drs. Johnson, Ivankovich and Nash will be filing suit against Cook County for discrimination, harassment and violation the Equal Pay Act.  Drs. Johnson and Ivankovich will also be filing suit against Cook County for retaliatory discharge.  Specifically, Drs. Johnson and Ivankovich will allege and prove that Cook County targeted them for termination due to the following:

- their open support for the Cook County physician's union organizing activities;
- their criticism of Cook County policies that negatively affect the health and welfare of the patients that Cook County is supposed to serve, e.g., offering UIC and Loyola physicians "titles" at Cook County in order to supplement their income;
- their outspokenness regarding Cook County policies that adversely affect Cook County physicians;
- their outspokenness regarding Cook County's failure and/or inability to bill for Orthopedic Surgeries and other procedures; and
- their outspokenness regarding the very large salaries that Cook County pays to certain high level individuals/physicians within the County system for working part time or virtually no time at Cook County; they have full time private practices and/or full-time positions, e.g., heading up departments at UIC, Loyola and/or some other institution.


EXHIBIT

MARCUS, BOXERMAN & CHATMAN, LLP

President Todd Stroger
Re: Drs. Johnson, Ivankovich & Nash
February 4, 2008
Page 2

In April of 2007, Drs. Johnson, Ivankovich and Nash were purportedly "laid off" as part of a "reduction in force" due to "budget cuts". Under those circumstance, Cook County was mandated to perform its duty in a prescribed manner, e.g., by seniority. But, Cook County (via the Bureau Chief and his minions) did not perform its duty in a prescribed manner. With malicious motives and intent, Cook County abused its power and took the opportunity to target these fine doctors for termination, in violation of public policy, thereby forfeiting any immunity it may have enjoyed for its shameful acts. Without said immunity, Cook County has no defense.

After the "layoffs", Drs. Johnson and Ivankovich filed grievances with Cook County and, in their grievance hearings, they put on extensive evidence supporting the facts as stated above. Cook County barely responded and what it said was incredible. Still, the Cook County Hearing Officer denied the grievances of these two dedicated physicians, putting politics, personal enrichment and personal vendettas ahead of the best interest of the medically needy citizens of Cook County.

During Drs. Johnson and Ivankovich's grievance hearings, Cook County countered that that Drs. Johnson and Ivankovich did not file grievances about their treatment until their positions and department were eliminated. Well first of all, Cook County did not really eliminate the department or the positions; it just eliminated Drs. Johnson and Ivankovich. After the purported "layoffs", Cook County: 1) kept the Podiatrist (who cannot admit patients to the hospital on his own); 2) kept virtually all of the orthopedic support staff; 3) transferred Dr. Allen Malk (an orthopedic surgeon) from Stroger Hospital to Provident Hospital right after the "layoffs", but he passed away shortly thereafter; 4) interviewed orthopedic surgeons for positions at Provident Hospital; and 5) advertised continued orthopedic services at Provident Hospital. Second of all, Drs. Johnson and Ivankovich did try to discuss their issues with Cook County, but these doctors were more interested in the wellbeing of their patients than their own personal well being. They complained about the way the patients were treated. They complained about the way the medical staff, as a whole, was treated. And, they worked diligently for the betterment of the system as whole; they wanted the patients to be first in the equation and not just pawns in a system set up to generate high salaries for the privileged few. Both of these doctors worked tirelessly for their patients and always put the patients first. Dr. Ivankovich volunteered his services for a year at Provident (2001-2002) before he joined the staff. Even after Cook County terminated his employment in April of 2007, Dr. Ivankovich offered to donate his services so that his patients wouldn't suffer. Cook County refused his offer because its goal was not really to save money for the people of Cook County. Its goal was not to serve the best interest of the patients of Cook County. Its goal was to get rid of Drs. Johnson and Ivankovich, shut them up, at any cost, and continue business as usual.

Regarding Dr. Nash, a fifteen (15) year veteran with the county, she worked seven (7) days a week and was on-call twenty-four (24) hours per day with only one weekend off per

MARCUS, BOXERMAN & CHATMAN, LLP

President Todd Stroger
Re: Drs. Johnson, Ivankovich & Nash
February 4, 2008
Page 3

month. In return, she was treated with disrespect and contempt and paid considerably less than her colleagues and subordinates. Consequently, like Drs. Johnson and Ivankovich, she is compelled to take legal action at this time.

Drs. Johnson, Ivankovich and Nash are providing this information as a courtesy and with the hope that it will stimulate communication and action on the part of the Cook County Board that will benefit the people of Cook County. In light of Cook County's behavior toward them to date, they do not expect any substantive response and are fully prepared to prosecute their individual claims against Cook County in the courts. However, they are reasonable people and remain amenable to constructive discussions with Cook County and the Board.

Thank you for your attention to this matter. Please feel free to call me to discuss this matter further.

Very truly yours,
Marcus, Boxerman & Chatman

By: _Linee C Chet_
Linda C. Chatman
LCC/kc

Cc: Cook County Board of Commissioners

3