IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIETTA L. JOHNSON, M.D., and<br>DANIEL IVANKOVICH, M.D., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | No. 08 C 2139<br>Magistrate Judge Susan E. Cox |
| v. | )<br>) | |
| COUNTY OF COOK, ROBERT SIMON,<br>M.D., in his individual and official capacity,<br>AARON HAMB M.D, in his individual and<br>official capacity, CLIFFORD<br>CRAWFORD, M.D., in his individual and<br>official capacity, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this action, Vietta Johnson, M.D., and Daniel Ivankovich, M.D., are two physicians that formerly worked in the Division of Orthopedic and Podiatric Surgery at one of the largest public health systems in the country, the defendant, County of Cook ("Cook County"). Plaintiffs filed their complaint against Cook County, Aaron Hamb, M.D., Robert Simon, M.D., and Clifford Crawford, M.D., in both their individual and official capacities, alleging: (1) race discrimination; (2) sex discrimination; (3) a First Amendment retaliation claim; (4) a Fourteenth Amendment equal protection claim; and (5) conspiracy. Presently before the Court is Cook County's motion to dismiss counts III, IV, and V and to dismiss plaintiffs' prayer for punitive damages, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, Cook County's motion is granted as to Count V and denied as to Counts III and IV [dkt 17].

## I. Background

In February 1998, Cook County hired Dr. Johnson as the Director/Chair of the Division of Orthopedic and Podiatric Surgery at Provident Hospital ("Provident") and Dr. Ivankovich was a surgeon in that same division. As an affiliate, Provident is one of the hospitals that operates under the Cook County Bureau of Health. Cook County terminated both doctors on April 13, 2007, due to a purported "reduction in force" whereby the entire orthopedic and podiatric surgery division at Provident was shut down. At all relevant times, defendant Dr. Simon was Chief of the Bureau of Health, defendant Dr. Hamb was Chief Medical Officer at Provident, and defendant Dr. Crawford was the Chairman of the Department of Surgery at Provident.

Sometime prior to being laid off, plaintiffs and other physicians at Provident had begun union organizing activities and had succeeded in forming a physicians union. Plaintiffs assert that it was their union activities, along with their criticisms of Cook County's business practices and its lack of patient support, that form the basis for their First and Fourteenth Amendment claims and their conspiracy claim. It should be noted that plaintiffs also assert various broad allegations that provide a backdrop for plaintiffs frustrations with Cook County. Most important to the claims at issue here, plaintiffs plead that Cook County has a long standing practice of excluding Blacks and women from management positions and, recently, have concentrated the few Black administrators and the majority of Black physicians at Provident. Plaintiffs then allege that Cook County has a long standing practice of underpaying and overworking Black and female physicians.

Plaintiffs also include in their complaint, however, additional extraneous facts that provide background for their criticisms of Cook County but do little to support the claims at issue. For example, plaintiffs allege: (1) Cook County citizens who seek health care within the system have to wait an excruciatingly long period of time for urgent medical procedures, and years for non-

urgent procedures; (2) Cook County claims that the long wait time is due to a lack of funds but Cook County purchased and installed a computer system that did not allow for the billing of insurers or patients; (3) Cook County has a policy of employing attending and resident physicians who work full time at other institutions without requiring that they spend any significant time caring for patients within the Cook County system; and (4) Cook County has a practice of paying high level administrators and executives high six figure salaries while those same administrators and executives work one or more additional full time jobs elsewhere. Alleging the importance of the orthopedic department at Provident, plaintiffs then plead that the orthopedic department led other hospital departments for clinic billing and was the referral hospital, as well as the "safety net," for all the south side hospitals. Finally, plaintiffs include allegations that Cook County has a policy that layoffs proceed from the least senior to the most senior, which did not happen in this case, and that they were not interviewed for open positions prior to the layoff as required, and as provided to other Cook County employees.

## II. Standard of Review

For purposes of this motion, the court assumes all well-pleaded allegations in plaintiffs' complaint to be true.[1] Defendants move to dismiss plaintiffs' claims on two separate grounds: (1) for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1); and (2) for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). First, a Rule 12(b)(1) motion challenges jurisdiction, or the court's power to decide.[2] Plaintiffs hold the burden to establish that jurisdictional requirements have been met.[3] A

---

[1] *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir. 2001).
[2] *In re Chicago,* 794 F.2d 1182, 1188 (7th Cir. 1986).
[3] *Kontos v. U.S. Dept. of Labor,* 826 F.2d 573, 576 (7th Cir. 1987).

court also may look beyond the complaint to determine whether subject matter jurisdiction exists.[4]

Second, a Rule 12(b)(6) motion does not test the merits of the case but, rather, the sufficiency of the allegations in the complaint.[5] Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] A complaint, therefore, does not need detailed factual allegations but it must contain more than "a formulaic recitation of the elements of a cause of action."[7] "Factual allegations must be enough to raise a right to relief above the speculative level," but even if recovery appears to be unlikely, a well-pleaded complaint will survive a motion to dismiss.[8]

**III.   Analysis**

In the first part of their motion, Cook County disputes this Court's jurisdiction because Counts III, IV and V allege constitutional violations and that defendants conspired against plaintiffs because of their pro-union activities. Cook County, thus, claims these allegations fall under the exclusive jurisdiction of the National Labor Relations Board ("NLRB"). The next part of their motion, however, is less than clear. Cook County lumps together counts III, IV and V and argues that: (1) plaintiffs' First Amendment claims should be dismissed pursuant to the United States Supreme Court ruling in *Garcetti v. Ceballos* because that case held that an individual employed by the government is not acting as a citizen if he or she makes statements within the scope of his or her employment, so the Constitution "does not insulate their communications from employer discipline;"[9] and (2) plaintiffs have failed to plead a cognizable section 1983 due process claim by

---

[4]*United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1209, 1210 (7th Cir. 1996).
[5]*Autry v. Northwest Premium Servs., Inc.,* 144 F. 3d 1037, 1039 (7th Cir. 1998).
[6]Fed.R.Civ.Pro. 8(2)(a).
[7]*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007).
[8]*Bell Atlantic Corp.,* 127 S.Ct. at 1965.
[9]547 U.S. 410, 421 (2006).

alleging that they went through a grievance process. But it is evident that these arguments do not relate to all three counts. Therefore, to better address the sufficiency of plaintiffs' complaint the Court will, contrary to defendants' approach, address each claim individually.

As a separate argument with respect to Count V, Cook County asserts that plaintiffs' section 1985 claim should be dismissed because plaintiffs fail to allege a mutual understanding between the individual defendants and argue that the claim is barred by the intracorporate conspiracy doctrine, which provides that a government entity cannot conspire with itself. Finally, Cook County contends that under section 1983, municipalities are immune from punitive damages so plaintiffs prayer for such damages should be stricken.

### A. Subject Matter Jurisdiction

Cook County argues that Counts III, IV and V should be dismissed because the NLRB has primary and exclusive jurisdiction over claims relating to unfair labor practices, and plaintiffs plead allegations of union organizing and claim anti-union animus. Cook County cites to what is known as the *Garmon* preemption doctrine, which provides that states are prohibited "from regulating conduct protected, prohibited or arguably affected by sections 7 and 8 of the National Labor Relations Act ("NLRA")."[10] Cook County, however, conveniently provides no additional support for its position.

In this case plaintiffs allege, among other claims, that they were openly supportive of the physicians union and its organizing activities, which was one reason Cook County targeted plaintiffs for discriminatory treatment and retaliation. To the extent that plaintiffs' section 1983 claim is based on an alleged violation of their rights under section 7 of the NLRA, it would seem to qualify as a

---

[10]*Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133, 136 (7th Cir. 1987).

subject of unfair labor practice, which should proceed before the NLRB. In other words, if a plaintiff's claim could have been brought before the NLRB as an unfair labor practice, it is not cognizable as a section 1983 claim precisely because the NLRB has exclusive jurisdiction to remedy unfair labor practices by employers.[11]

However, though not argued by either party, the NLRA specifically removes political subdivisions of the State from its definition of employers.[12] Similar to this case, where a former corrections officer filed a section 1983 claim against the Cook County Sheriff's Department, the district court held that because defendants provided no argument as to how the NLRA could preempt the claims against the government entities in the case, given the language of 29 U.S.C. § 152(2), their motion to dismiss on preemption grounds was dismissed.[13] In that case, the defendant was the Cook County Sheriff's department and because section 152(2) provides that the term "employer" for purposes of the NLRA does not include any State or political subdivision, the court held that the NLRA did not apply.[14]

During oral argument, because counsel for Cook County had not addressed this point in their briefs, the Court requested that Cook County supplement its briefs on this issue. Cook County has not done so and, accordingly, the Court assumes it concedes this point. Therefore, because we also have plaintiffs who have filed a complaint against a defendant that is a political subdivision of the State- the entity that operates the Cook County Bureau of Health - preemption is not appropriate.

**B.     Section 1983 Retaliation Claim: Count III**

---

[11]*See Tenuto v. Clair,* No. 08 C 1617, 2008 WL 4594514, *1 (N.D. Ill. Oct. 14, 2008)(finding actions alleged were at least arguably subject to sections 7 and 8 of the NLRA, requiring the court to defer to the competence of the NLRB); *see also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 108 (1989).
[12]29 U.S.C. § 152(2).
[13]*Swearingen-El v. Cook County Sheriff's Dep't,* 416 F.Supp.2d 612, 617-18 (N.D. Ill. Jan. 12, 2006).
[14]*Swearingen-El,* 416 F.Supp.2d at 618.

Here, Cook County's argument, citing *Garcetti*, is that plaintiffs were not acting as citizens speaking for public concern but were acting as Cook County doctors and, therefore, their claim must fail. Though again applied to all three Counts, the Court understands this argument to relate to Count III only. *Garcetti* requires "that before analyzing whether an employee's speech is of public concern, a court must determine whether the employee was speaking 'as a citzen' or, by contrast, pursuant to his duties as a public employee."[15] If it is determined that a public employee's statements were made as a citizen, rather than in his or her capacity as an employee, then the next question is whether the speech was a matter of public concern.[16] If, however, it is found that the employee was speaking pursuant to his or her duties as a public employee on matters of personal interest, then "'a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a public agency...'"[17] Cook County argues precisely this point: that as a government entity it has broad discretion to restrict speech when it acts in its role as employer, meaning that plaintiffs' allegations of unconstitutional retaliation must fail.

There is simply no way, on a motion to dismiss, that the Court can determine whether the plaintiffs in this case "sought to 'bring to light actual or potential wrongdoing or breach of public trust.'"[18] To determine whether plaintiffs' speech was that of a citizen on matters of public concern, the court must look to the content, form and context of the statements made.[19] Courts have noted that of these three, content is the most important.[20] Plaintiffs have alleged that they were wrongfully

---

[15] *See Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 509 (7th Cir. 2007).
[16] *See Shefcik v. Village of Calumet Park,* 532 F.Supp.2d 965, 974 (N.D. Ill. 2007)(noting that the question of whether speech is a matter of public concern is determined under the balancing test stated in *Pickering v. Brd of Educ.,* 391 U.S. 563 (1968)).
[17] *Miller v. Jones,* 444 F.3d 929, 935 (7th Cir. 2006)(citing *Connick v. Myers,* 461 U.S. 138, 146 (1983)).
[18] *See id*. (determining whether the employee's speech was that of a citizen on matters of public concern, by looking to whether the employee sought to "bring to light" a potential wrongdoing or a breach of public trust).
[19] *See Miller,* 444 F.3d at 935.
[20] *Id.*

retaliated against for their speech not only with respect to union organizing activities, but also as a result of their criticisms regarding Cook County's: (1) inability to bill for services; (2) failure to earmark necessary resources for direct patient care; (3) large amount of resources earmarked for non-patient care and executive/management salaries; and (5) disparate treatment of Black and female physicians as opposed to non-Black and male physicians. The Court has no information on when exactly these statements were made, to whom they were made, or whether plaintiffs were even working when these criticisms were shared. Even if the Court were to pass the first prong of the test by determining whether or not plaintiffs' statements were made in their capacities as employees, the next question would require the Court to ascertain whether the subject matter was of legitimate news interest, or of concern to the public.[21] That is simply something the Court cannot do at this stage in the litigation. Cook County's motion as to plaintiffs' section 1983 claim in Count III is, therefore, denied.

### C. Section 1983 Due Process Claim: Count IV

Next, Cook County argues that plaintiffs have pleaded themselves out of their due process claim by demonstrating that due process was provided to them through a grievance process. Before addressing the substance of the argument, however, there are a few clarifications that need to be made. First, though defendants apply this argument to Counts III, IV, and V, after further review of the complaint and plaintiffs' response brief, the argument appears to relate only to plaintiffs' Fourteenth Amendment claim in Count IV. In addition, despite the fact that Cook County did not present an argument challenging plaintiffs' equal protection claim in its motion, the Court will nonetheless address it in light of comments made by Cook County's counsel in open court, which

---

[21] *Id.* (defining "public concern" as the subject of legitimate news interest).

were arguably made in defense of an equal protection allegation. Finally, it should be noted that a procedural due process violation only exists where the state has deprived the plaintiff of a constitutionally protected interest without affording a constitutionally acceptable procedure.[22] During oral argument on the motion, however, plaintiffs clarified that their claim was a substantive due process claim, not a procedural one. But there is no substantive due process claim expressly alleged and neither side discussed the pleading requirements for such a claim. The Court will, therefore, discuss the equal protection claim and the parties' arguments regarding substantive due process, as well as the pleading requirements for both.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."[23] This clause encompasses three types of protection, so even without procedural due process injuries, there are other constitutional harms that may arise.[24] A substantive due process violation requires that a plaintiff show that a governmental practice "encroaches on a fundamental right" and that the practice was not rationally related to a legitimate government interest.[25] In other words, plaintiffs are protected only against arbitrary government action that "shocks the conscience."[26]

The Court must first determine whether defendants deprived plaintiffs of a constitutionally protected right. The Seventh Circuit has provided that "a claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty or property interest."[27]

---

[22] *See Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir. 2005).
[23] U.S. Cont. Amend. XIV, §1.
[24] *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994); *see also Zinermon v. Burch,* 494 U.S. 113, 125 (1990)(outlining the three kinds of section 1983 claims).
[25] *Lee v. City of Chicago,* 330 F.3d 456, 467 (7th Cir. 2003).
[26] *Tun v. Whitticker,* 398 F.3d 899, 902 (7th Cir. 2005).
[27] *Zorzi v. County of Putnam,* 30 F.3d 885, 894 (7th Cir. 1994).

Plaintiffs do not plead, or argue, the type of interest upon which their substantive due process claim is based. The Court can postulate that plaintiffs' claim is not based on a deprivation of life, thus, the claim is either based on a deprivation of "liberty" or "property." One viable liberty interest is "occupational liberty," which would seem to apply here. But because occupational liberty is not protected under the substantive due process clause (only under procedural due process), plaintiffs claim cannot survive based on a deprivation of occupational liberty.[28] Thus, the Court is left to assume that plaintiffs assert a deprivation of property, which requires plaintiffs to show a right to continued employment created by express or implied contract or by statute.[29]

As pleaded, plaintiffs fail to allege facts that show a viable property interest in their positions at Provident. There is no indication that plaintiffs had an employment contract and plaintiffs do not plead any implied contractual right to their employment. So without allegations that plaintiffs were deprived of a life, liberty, or property interest, a section 1983 substantive due process violation cannot stand.

Rather than a source of substantive law, the guarantee of equal protection of the laws is "'a right to be free from invidious discrimination in statutory classifications and other governmental activity.'"[30] Thus, to properly plead an equal protection claim a plaintiff must allege that "a state actor purposefully discriminated against [her] because of [her] identification with a particular

---

[28]*See Ill. Psychological Assoc. v. Falk,* 818 F.2d 1337, 1343-44 (7th Cir. 1987); *see also Horstmann v. St. Clair County, Il.,* No. 07-3190, slip op. at 2 (7th Cir. Sept. 8, 2008)(noting that "[e]mployment rights are state-created rights, and a public employee's interest in continued employment does not rise to the level of a 'fundamental' right").

[29] *See Horstmann,* No. 07-3190, slip op. at 2; *see also Singleton v. Chicago School Reform Bd. of Trustees of the Bd. of Educ.of the City of Chicago,* 2000 WL 777925, *6 (N.D. Ill. June 13, 2000)(holding that for the plaintiff to properly state a deprivation of property interest, the interest must have first been created by statute, express contract, or implied contract).

[30]*Shango v. Jurich,* 681 F.2d 1091, 1103 (7th Cir. 1982).

(presumably historically disadvantaged) group."[31] A plaintiff must "demonstrate intentional or purposeful discrimination," meaning a plaintiff must show that a decisionmaker "singled out a particular group for disparate treatment" and took particular action to cause, at least in part, the adverse effect on the identified group.[32] Applying this standard here, the claim will stand if there is a reasonable likelihood that Cook County purposefully and intentionally discriminated against plaintiffs in eliminating their positions at Provident.

With these principles in mind, the Court finds that plaintiffs include enough facts to support their equal protection claim. Plaintiffs allege that Cook County singled them out by eliminating their jobs, not only because of their race and gender, but also because of their criticisms of Cook County. For example, incorporated by reference into their equal protection claim, plaintiffs allege that "Cook County has along standing practice of excluding Blacks and women from management positions...and most recently have concentrated the few Black administrators and the majority of Black physicians at its [sic] affiliate, Provident Hospital."[33] Directly alleged in their equal protection claim, plaintiffs assert that they were "critical of the disparities in salaries and other treatment of Black and female physicians as opposed to non-Black and male physicians," and as a consequence, were subject to retaliation by termination.[34] They also allege that Cook County's actions were pretextual (by calling the closing of the Orthopedic group a reduction in force), which is evidenced by the fact that Cook County kept one podiatrist on staff and kept most of the Orthopedic support staff at Provident.

These allegations are broad, generalized allegations. But they are sufficient to "put the

---

[31] *Sherwin Manor Nursing Ctr., Inc.,* 37 F.3d at 1220.
[32] *Shango,* 681 F.2d at 1104.
[33] Complaint, ¶ 20.
[34] Complaint, ¶¶ 50-51.

defendant on notice of the claim against it to 'begin to investigate and prepare a defense.'"[35] Because a plaintiff alleging illegal discrimination must simply plead that "it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim."[36] The Seventh Circuit has made clear that plaintiffs need only allege the basic principles for the claim, which, in this case are allegations that plaintiffs were female, Black employees, subject to an adverse employment action and treated differently than similarly situated male and non-Black employees.[37]

It is also evident that defendants *are* on notice of the claim. During oral argument, defendants' counsel stated that "there is a concept of race concordant care," used by Provident. He explained that it is a theory "supported by lots of different doctors around the country," which apparently stands for the proposition that minorities, whether they are Black or Latino, "feel more comfortable with doctors who look like them."[38] So though defendants did not want to concede the point that they purposefully were concentrating Black doctors at Provident, counsel for defendants stated that because the area around Provident was predominantly Black, it was best practice to put doctors "who look like the people they serve" in the hospital.[39] Defendants are already, therefore, preparing a defense to plaintiffs' equal protection claim.

We conclude, therefore, that plaintiffs have established the basic premise for an equal protection claim; they have shown a reasonable likelihood that Cook County purposefully and

---

[35] *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1085 (7th Cir. 2008)(finding that *Twombly* does not bar conclusory statements from pleadings).

[36] *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773, 782 (7th Cir. 2007); *see also Norman-Nunnery v. Madison Area Tech. College,* 2008 WL 4379298, *4 (W.D. Wis., Sept. 23, 2008)(finding this principle applicable to both discrimination claims under Title VII and under the equal protection clause).

[37] *See Tamayo,* 526 F.3d at 1085 (holding that plaintiff's complaint included enough facts to support her claim alleging a Fourteenth Amendment violation because she alleged that she was a female, paid less than similarly situated males, was subjected to adverse employment actions, and treated differently than similarly situated male employees).

[38] Oral Argument, Jan. 14, 2008.

[39] Oral Argument, Jan. 14, 2008.

intentionally discriminated against them, as a class.[40] The motion to dismiss count IV is denied.

### D. Section 1985 Conspiracy Claim

Moving to Count V, plaintiffs first properly point out that this claim does not involve the movant in this matter, Cook County, because it is specifically against the individual defendants. It should be noted, however, that because Cook County is already a defendant, alleging claims against the individual doctors in their official capacities is redundant and unnecessary.[41] So unless this claim is directed at the individual defendants in their individual capacities only, then Cook County is the appropriate defendant to move to dismiss this claim.

As to the merits of the motion, Cook County argues, again only its initial papers but not in its reply brief, that plaintiffs' section 1985 claim should be dismissed because plaintiffs fail to allege any acts of mutual understanding between the individual defendant doctors and because the intra-corporate conspiracy doctrine bars the claim. Section 1985(3) "creates a cause of action against 'two or more persons' who conspire 'for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"[42] "[M]ere allegations of ... conspiracy do not demonstrate that [defendants] acted under color of state law and are not sufficient to state a cause of action under §1985(3)."[43] But it is enough when pleading a conspiracy "to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with."[44] Four elements are required to show a valid case under section

---

[40]*See Sherwin Manor Nursing Ctr., Inc.,* 37 F.3d at 1221 (holding that plaintiff presented a cognizable equal protection claim because it alleged that it was subjected to differential treatment based upon anti-Semitic animus).
[41]*See Berry v. Ill. Dep't of Human Serv.,* 2001 WL 111035 (N.D. Ill. Feb. 2, 2001).
[42]*See Stewart v. Sears,* 182 F.3d 922, *2 (7th Cir. 1999).
[43]*Bowman v. City of Franklin,* 980 F.2d 1104, 1109 (7th Cir. 1992).
[44]*Walker v. Thmpson,* 288 F.3d 1005, 1007 (7th Cir. 2002).

1985(3): (1) a conspiracy; (2) a purpose of depriving, directly or indirectly, any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or a deprivation of any right or privilege of a citizen of the United States.[45]

Here, plaintiffs have outlined the following components of the alleged conspiracy: the defendants involved in the conspiracy were Robert R. Simon, M.D., Aaron Hamb, M.D., and Clifford Crawford, M.D., the purpose was to deprive plaintiffs of equal protection by wrongfully terminating plaintiffs and discontinuing the Orthopedic and Podiatric Surgery Division at Provident because of their complaints regarding financial abuses and their support for unionization, and these actions took place prior to, and including, April 2007. Though following this standard plaintiffs appear to have pleaded sufficient facts "from which a conspiracy can be inferred" to survive a motion to dismiss, there is one more issue to address.[46]

More importantly, the general rule is that a conspiracy cannot exist if it is only between members of the same entity.[47] This rule applies to both private corporations and government entities alike.[48] There are two exceptions to this doctrine: (1) if the conspirators were motivated solely by personal concerns; or (2) if the conspiracy is part of some broader discriminatory pattern, which "permeates the ranks of the organization's employees."[49]

Plaintiffs argue that the second exception applies: that the conspiracy was part of a broader

---

[45] *Keri v. Bd. of Trs. of Purdue Univ.,* 458 F.3d 620, 642 (7th Cir. 2006).
[46] *See Quinones v. Szorc,* 771 F.2d 289, 291 (7th Cir. 1985)(holding that "circumstantial evidence of the conspiracy, particularly regarding overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial.").
[47] *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632-33 (7th Cir. 1999).
[48] *Wright v. Ill. Dep't of Children & Family Serv.,* 40 F. 3d 1492, 1508 (7th Cir. 1994).
[49] *See Berry,* 2001 WL 111035, *9 (citing *Hartman v. Brd of Trustees of Cmty. College Dist. No. 508,* 4 F.3d 465, 470 (7th Cir. 1993).

discriminatory pattern. Plaintiffs explain that Cook County isolated the majority of Black physicians at Provident, paid them less money, and conspired against them when plaintiffs complained about these problems and other deficiencies that existed in patient care. Plaintiffs also allege a long standing practice of failing to bill and the paying of exorbitant executive salaries.

The question for the Court then is whether plaintiffs have sufficiently alleged "so many unlawful acts and participation by so many employees that they fall within the exception that the conspiracy has permeated the ranks of [Cook County's] employees."[50] The Seventh Circuit has found that several defendants involved in numerous acts of discrimination could overcome the intracorporate conspiracy doctrine.[51] The alleged conspiracy here, however, appears to be limited in its goal (to rid of plaintiffs from Provident) and in its membership (only the three individual defendants named). Plaintiffs argue in response to the motion that the conspiracy was part of a broader discriminatory pattern, and that it permeated the ranks of the organization's employees, but the Court fails to see how this exception applies here. Rather, it appears that this case does not involve the kind of extensive discriminatory conspiracy that other cases held could be sufficient to fall outside the protection of the intracorporate conspiracy doctrine.[52] Therefore, Cook County's motion is granted with respect to Count V.

### E. Punitive Damages Claim

Cook County seeks to strike plaintiffs request for punitive damages, arguing that a

---

[50] *See id.* at *10.
[51] *See Volk v. Coler,* 845 F.2d 1422, 1435 (7th Cir. 1988).
[52] *See Berry,* 2001 WL 111035, *10(finding that because unlawful acts were performed by at least 20 supervisory employees at six different defendant facilities, affecting 33 employees, the intracorporate conspiracy doctrine was avoided); *see also Wright v. Ill. Dept. Of Children & Family Services,* 40 F.3d 1492, 1508-09 (7th Cir. 1994)(holding that "except in egregious circumstances, intra-entity discussions that result in discriminatory or retaliatory actions lie outside the scope of § 1985").

municipality is immune from punitive damages under section 1983. Plaintiffs assert, however, that they seek punitive damages only with respect to the individual defendants in their individual capacities. Plaintiffs correctly note that a jury may award punitive damages against individuals in section 1983 actions "when it finds conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others."[53] Cook County's request to strike plaintiffs prayer for punitive damages in Count III is, therefore, denied.

### IV. Conclusion

Cook County's motion is granted as to Count V and denied as to Counts III and IV [dkt 17]. Further status set for April 29, 2009 at 9:30a.m.

**IT IS SO ORDERED**

**ENTERED: February 10, 2009**            _____

                                                    **UNITED STATES MAGISTRATE JUDGE**

---

[53] *See Erwin v. County of Manitowac,* 872 F.2d 1292, 1299 (7th Cir. 1989)